(799 P.2d 110)
No. 64,604

MICHELLE R. DURRETT, *Plaintiff/Appellant*, v. RICHARD R. BRYAN, *Defendant*, and UNITED SERVICES AUTOMOBILE ASSOCIATION, *Intervenor/Appellee*.

Opinion filed September 28, 1990.

Greg L. Musil, of Shughart Thomson & Kilroy, P.C., of Overland Park, and *P. John Brady*, of Shughart Thomson & Kilroy, P.C., of Kansas City, Missouri, for appellant.

Paul Hasty, Jr., and *Ben T. Schmitt*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellee.

Ted F. Fay, special assistant attorney general and chief attorney, and *Mike Broemmel*, of the Kansas Insurance Department, for *amicus curiae* Fletcher Bell, Commissioner of Insurance of the State of Kansas.

Before BRAZIL, P.J., RULON and LEWIS, JJ.

BRAZIL, J.: Michelle Durrett appeals a decision of the district court ordering her to pay intervenor United Services Automobile Association (USAA) $10,000, pursuant to a subrogation clause in her automobile insurance policy. She contends that subrogation of medical payments made pursuant to a seat belt endorsement in her automobile policy was expressly prohibited by K.A.R. 40-1-20. We reverse and remand with directions to enter judgment for Durrett.

Durrett and Richard Bryan, not a party to this appeal, were involved in an automobile accident. At the time of the accident, Durrett was insured under a policy of insurance issued to her by USAA. USAA paid Durrett $5,014.59 in personal injury protection (PIP) benefits and $10,000 in medical benefits pursuant to a policy endorsement titled "SEAT BELT BENEFITS ENDORSEMENT." This seat belt endorsement provided that, if the insured was covered by personal injury protection at the time of an accident and was injured while wearing a seat belt, USAA would provide additional medical benefits. Specifically, USAA agreed to "pay up to $10,000 for reasonable expenses incurred for necessary medical services caused by bodily injury sustained by a covered person in an automobile accident." The seat belt endorsement further provided that its coverage was "subject to all provisions of the policy," which included a subrogation clause. The parties agree Durrett paid no additional premium for this endorsement coverage.

Durrett subsequently filed suit against Bryan and recovered a judgment of $123,325.34 of which $17,778.76 was for past medical expenses and $2,000.00 was for future medical expenses. The jury found Durrett 20 percent at fault and the court reduced the damages to be awarded her by that percentage, to $98,660.28.

USAA filed a motion to intervene in the case, seeking recovery of the benefits it had paid Durrett and claiming a lien on the proceeds of Durrett's judgment award against Bryan. USAA then filed a motion for summary judgment in the case. The memorandum submitted in connection with the motion shows both parties agreed that, pursuant to K.S.A. 1989 Supp. 40-3113a, USAA was subrogated to and had a valid lien for the duplicative

PIP benefits paid Durrett. But, Durrett argued as a matter of law that K.A.R. 40-1-20 expressly prohibited any clause in an insurance contract providing for subrogation of medical benefits. Both parties agreed that no material facts were in dispute. The trial court granted USAA's motion for summary judgment, awarding it recovery of the entire $10,000.

Durrett does not contend that any material facts were still in dispute when the trial court granted summary judgment to USAA. She maintains instead that the trial court erred because, as a matter of law, USAA was not entitled to a favorable judgment. "This court's review of conclusions of law is unlimited." *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

Durrett contends that the clause in the insurance contract under which USAA claimed a right to recover the benefits it paid her was a subrogation clause expressly prohibited by K.A.R. 40-1-20. That regulation provides: "An insurance company shall not issue contracts of insurance in Kansas containing a 'subrogation' clause applicable to coverages providing for reimbursement of medical, surgical, hospital or funeral expenses." We note that the legislature has provided for subrogation of PIP benefits. K.S.A. 1989 Supp. 40-3113a.

In their briefs, both parties agreed that the seat belt endorsement provided medical benefits coverage, and not additional PIP medical coverage, and that the insurance clause providing for recovery of benefits was a subrogation clause. But, at oral argument, USAA contended the endorsement provided extended PIP benefits. "Extended insurance" is a term of art that has no relevance in this case.

"Extended insurance is that where the insurance originally contracted for is continued for such period as the amount available therefor will pay when it will terminate; whereas paid-up insurance means that no more payments are required, and consists of insurance for life in such an amount as the sum available therefor, considered as a single and final premium, will purchase. In other words, 'paid-up insurance' is insurance for the life of the insured, upon which all the premiums have been paid, whereas 'extended insurance' is insurance for the full amount of the policy for the period contemplated by a nonforfeitable table." 6 Couch on Insurance 2d § 32:137 (rev. ed 1985).

What USAA probably meant to argue was that the seat belt endorsement provided excess PIP medical benefits. Excess PIP medical benefits would be all PIP medical benefits coverage in excess of the $4,500 minimum required by the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.*

The right of subrogation under K.S.A. 1989 Supp. 40-3113a(b) to excess PIP medical benefits was considered in *Hall v. State Farm Mut. Auto. Ins. Co.*, 8 Kan. App. 2d 475, 661 P.2d 402, *rev. denied* 233 Kan. 1091 (1983). When *Hall* was decided, $2,000 was the minimum PIP benefit required by KAIRA. State Farm's policy offered six different levels of PIP coverage ranging from $2,000 to $25,000. The plaintiff contracted for $25,000 coverage, and this court concluded that the medical benefits provided beyond $2,000 were excess PIP benefits subject to subrogation under 40-3113a(b). 8 Kan. App. 2d at 482.

As one commentator has noted, after *Hall*, "[i]nsurers may choose to denominate any excess medical coverage purchased by the insured as 'PIP Coverage,' thereby creating a statutory right to subrogation of all PIP benefits paid the insured." Jerry, *Recent Developments in Kansas Insurance Law: A Survey, Some Analysis, and Some Suggestions*, 32 Kan. L. Rev. 287, 341 (1984).

Unlike the policy in *Hall*, the insurance policy in the present case did not denominate the seat belt endorsement as PIP coverage. The PIP endorsement was an entirely separate endorsement providing only the minimum $2,000 in medical benefits coverage. The policy is not unusual in also providing a section titled "medical payments coverage" entirely separate from the PIP endorsement. We conclude that the seat belt endorsement provided medical benefits coverage, not excess PIP benefits.

Both parties also agree that K.A.R. 40-1-20, if validly promulgated, would seem to prohibit the application of a subrogation clause in Kansas where medical benefits are involved. USAA, however, maintains the Kansas Insurance Department exceeded statutory authority in promulgating K.A.R. 40-1-20, and so the regulation is void and of no effect.

The Kansas Insurance Department, which promulgated K.A.R. 40-1-20, is an administrative agency.

"Administrative agencies are creatures of statute and their power is dependent upon authorizing statutes, therefore any exercise of authority claimed by the agency must come from within the statutes. There is no general or common law power that can be exercised by an administrative agency.

"Rules or regulations of an administrative agency, to be valid, must be within the statutory authority conferred upon the agency. Those rules or regulations that go beyond the authority authorized, which violate the statute, or are inconsistent with the statutory power of the agency have been found void. Administrative rules and regulations to be valid must be appropriate, reasonable and not inconsistent with the law." *Pork Motel, Corp. v. Kansas Dept. of Health & Environment,* 234 Kan. 374, 378-79, 673 P.2d 1126 (1983).

"The power of an administrative agency to adopt rules and regulations is administrative in nature, not legislative, and to be valid administrative regulations must be within the authority conferred. An administrative regulation which goes beyond or conflicts with legislative authorization is void." *Amoco Production Co. v. Armold, Director of Taxation,* 213 Kan. 636, Syl. ¶ 1, 518 P.2d 453 (1974).

The primary issue in this case then is whether the statutory authority asserted by the agency as the basis for K.A.R. 40-1-20 was broad enough to authorize the regulation.

K.A.R. 40-1-20 indicates it is authorized by K.S.A. 40-103 and K.S.A. 1989 Supp. 60-217(a) and implements K.S.A. 40-216, K.S.A. 40-1110, K.S.A. 40-2201, K.S.A. 1989 Supp. 40-2203, and K.S.A. 40-2204. Whether these statutes provide sufficient authority for K.A.R. 40-1-20 requires interpretation of the statutes indicated.

"The interpretation of a statute is a question of law and it is the function of a court to interpret a statute to give it the effect intended by the legislature."

"While the administrative interpretation of a statute should be given consideration and weight it does not follow that a court will adhere to the administrative ruling where the statute is clear and the administrative ruling is erroneous. The final construction of a statute rests within the courts." *Amoco Production Co. v. Armold, Director of Taxation,* 213 Kan. 636, Syl. ¶¶ 4, 5.

K.S.A. 40-103, the first statute cited, provides:

"The commissioner of insurance shall have general supervision, control and regulation of corporations, companies, associations, societies, exchanges,

partnerships, or persons authorized to transact the business of insurance, indemnity or suretyship in this state and shall have the power to make all reasonable rules and regulations necessary to enforce the laws of this state relating thereto."

The *amicus curiae* argues that this statute somehow provides such a broad grant of authority as to warrant the regulation in question. The statute expressly provides, however, only the power to make regulations necessary to enforce the laws relating to supervision of insurance, *i.e.*, some other statute must first provide more specific basis for authority before this statute comes into play.

K.S.A. 1989 Supp. 60-217(a), generally speaking, requires that every legal action be prosecuted in the name of the real party in interest. One author indicates this statute "effects a purely procedural change," leaving the "substantive law as to what claims are assignable" unaffected. 2 Vernon's Kansas C. Civ. Proc. § 60-217, Author's Comments (1963). While the statute might require an insurance company to pursue any subrogation rights in its own name, it would not provide authority to bar subrogation clauses in insurance contracts generally.

K.S.A. 40-216 requires insurance companies to file their policies with the Kansas Insurance Department and authorizes that agency to prevent the issuance or delivery of any insurance contract within 30 days of its filing when the agency believes the contract does not comply with the laws of this state. The statute does not, however, provide authority in and of itself to exclude substantive provisions absent some other authority within the statutes of this state.

K.S.A. 40-1110 discusses what supplemental coverages or endorsements may be included in connection with insurance against bodily injury liability. Subrogation is not addressed by this statute, either directly or impliedly.

K.S.A. 40-2201 merely defines the term "policy of accident and sickness insurance."

Durrett and the Kansas Insurance Department place their primary reliance on the two remaining statutes, K.S.A. 1989 Supp. 40-2203 and K.S.A. 40-2204.

K.S.A. 1989 Supp. 40-2203(A) sets forth thirteen uniform policy provisions which must be included in every policy of accident or sickness insurance issued or delivered in this state. K.S.A. 1989

Supp. 40-2203(B) lists eleven additional provisions which are not required but which, if they are included, must be set forth in the wording of the statute or wording no less favorable to the insured. No section of K.S.A. 1989 Supp. 40-2203 mentions subrogation or acts either to permit or exclude it.

K.S.A. 40-2204(A) provides: "Other policy provisions: No policy provision which is not subject to K.S.A. 40-2203 shall make a policy, or any portion thereof, less favorable in any respect to the insured or the beneficiary than the provisions thereof which are subject to this act."

A policy provision providing for subrogation is "not subject to K.S.A. 40-2203." Durrett and the Kansas Insurance Department argue that a subrogation provision, by having the effect of reducing the benefits ultimately received by a policyholder, would be a less favorable provision, and so prohibited by K.S.A. 40-2204(A). USAA seems to place the same interpretation on K.S.A. 40-2204(A), but argues a subrogation clause makes the policy no less favorable to the insured as it does not diminish coverage but merely acts to prevent recovery of duplicative benefits.

We conclude that a subrogation clause is a provision less favorable to the insured than those provisions delineated in K.S.A. 1989 Supp. 40-2203. Thus, K.S.A. 40-2204, when read in conjunction with K.S.A. 1989 Supp. 40-2203, provides adequate statutory authority for the promulgation of K.A.R. 40-1-20.

The attorney general has issued an opinion to the effect that, while the other statutes cited do not provide a sufficient basis for K.A.R. 40-1-20, K.S.A. 40-2204 does provide the necessary authority. Att'y Gen. Op. No. 84-35. While an opinion issued by the attorney general's office is not binding on this court, the court may find it persuasive. See *Moore v. City of Lawrence,* 232 Kan. 353, 362, 654 P.2d 445 (1982).

The interpretation and analysis of the Kansas Insurance Department is also significant. "Ordinarily, the interpretation placed on a statute by the administrative agency charged with its enforcement is entitled to judicial deference and may be of controlling significance." *Board of Johnson County Comm'rs v. Greenhaw,* 241 Kan. 119, 122, 734 P.2d 1125 (1987).

Finally, it is significant that the legislature has affirmatively authorized a right of subrogation with regard to PIP benefits,

K.S.A. 1989 Supp. 40-3113a, and uninsured motorist benefits, K.S.A. 40-287. This suggests the legislature believed subrogation was not otherwise available in Kansas. The fact that the legislature expressly provided for subrogation in only these two circumstances suggests it intended to preclude subrogation with regard to other types of insurance coverage.

USAA next argues that, even if the statute was based on sufficient statutory authority, it violates the Kansas Bill of Rights, which provides: "All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay." Kan. Const. Bill of Rights, § 18.

Section 18 "does not create rights of action; it only requires that Kansas courts be open and afford a remedy for such wrongs that are recognized by law." *Clements v. United States Fidelity & Guaranty Co.*, 243 Kan. 124, 128, 753 P.2d 1274 (1988). K.A.R. 40-1-20 does not deny a right implicitly or explicitly guaranteed by the United States Constitution or Section 18 of the Kansas Bill of Rights. The only right that could have been created here was a contract right. Because K.A.R. 40-1-20 forbade such a contract clause, no right ever came into existence. As a result, there was no injury, no wrong recognized by law, and no wrongdoer from whom USAA was denied a remedy. "No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit." *New York Central R. R. Co. v. White*, 243 U.S. 188, 198, 61 L. Ed. 667, 37 S. Ct. 247 (1917).

Finally, USAA contends K.A.R. 40-1-20 is void due to vagueness. Its argument seems to be that various types of policies pay medical, surgical, hospital, or funeral benefits, and the regulation's failure to delineate the types of general policies to which it applies makes it too broad for practical application.

"Administrative regulations are presumptively valid, and one who attacks them has the burden of showing their invalidity." *Smaldone v. United States*, 458 F. Supp. 1000, 1003 (D. Kan. 1978). The standard for determining whether a statute is unconstitutionally vague is a common-sense determination of fairness. *Gumbhir v. Kansas State Board of Pharmacy*, 231 Kan. 507, 518, 646 P.2d 1078 (1982), *cert. denied* 459 U.S. 1103 (1983). "Can

an ordinary person exercising ordinary common sense understand and comply with the statute? If so, it is not unconstitutionally vague." 231 Kan. at 518. The language of the regulation is clear; the words used are those in common usage or those which have been judicially defined.

USAA correctly notes that in *Hall v. State Farm Mut. Auto. Ins. Co.,* 8 Kan. App. 2d at 481, this court found K.A.R. 40-1-20 invalid to the extent it contravened 40-3113a(b), which allows subrogation with regard to PIP benefits (including where *medical benefits* are provided under PIP coverage). Contrary to the argument of USAA, however, this narrowing in scope does not prove the regulation void for vagueness or for any other reason. It merely illustrates the principle that a regulation cannot contravene a controlling statute and necessitates that the regulation be read in conjunction with the insurance code. See 8 Kan. App. 2d at 481.

K.A.R. 40-1-20 is not constitutionally void for vagueness.

We conclude that K.A.R. 40-1-20 is a validly issued regulation. A validly issued regulation adopted to carry out policy declared by the legislature in the statutes has the force and effect of law. *Tew v. Topeka Police & Fire Civ. Serv. Comm'n,* 237 Kan. 96, 100, 697 P.2d 1279 (1985). Because the subrogation clause in question applied to coverage providing reimbursement of medical expense, it is within the ambit of the prohibitions of K.A.R. 40-1-20 and is void and of no effect.

Reversed and remanded with directions to enter judgment for Durrett.