(871 P.2d 861)

No. 69,620

UNIFIED SCHOOL DISTRICT No. 259, Sedgwick County, Kansas, *Appellee*, v. SHARON. K. SLOAN, *Appellant.*

Petition for review denied 255 Kan. 1007 (1994).

Opinion filed April 1, 1994.

*Jack Scott McInteer* and *Randall K. Rathbun*, of Depew, Gillen & Rathbun, of Wichita, for appellant.

*John Terry Moore, Thomas R. Powell*, and *Douglas P. Witteman*, of Hinkle, Eberhart & Elkouri, L.L.C., of Wichita, for appellee.

Before GERNON, P.J., LEWIS, J., and JOHN W. WHITE, District Judge, assigned.

GERNON, J.: Sharon Sloan appeals the district court's granting of summary judgment to Unified School District No. 259 (U.S.D. No. 259). The district court found that Sloan was liable under her health insurance plan to reimburse her insurer for health care benefits paid on behalf of her deceased husband out of a

settlement received from third parties. The settlement was silent as to allocation of the elements of damage.

Sloan, as an employee of U.S.D. No. 259, participated in its group health plan (Plan). Paragraph XIV.B. of the Plan states:

"This Plan is allowed to recover from the employee any benefits paid for injury or sickness where a third-party has caused the injury or sickness as a result of his/her negligence or wrong and the employee or eligible dependent recovers a judgment or settlement from the third-party for charges allowed by the Plan."

Sloan's husband became ill and eventually died. While he was ill, his health plan paid $32,570 in benefits. Sloan received $427,500 as settlement in a suit against various chemical manufacturers. The suit asked for $1.95 million as damages. U.S.D. No. 259 was not a party to the lawsuit, nor did it intervene. U.S.D. No. 259 did not receive notice of or participate in settlement negotiations.

U.S.D. No. 259 brought suit against Sloan for breach of the insurance contract. The district court granted U.S.D. No. 259 summary judgment, finding as a matter of law that the Plan at issue was not subject to regulation by the Kansas Insurance Department. The court also found:

"With respect to defendant's argument in interpreting paragraph XIV.B. that the amount of the medical expenses was not in fact recovered because of some limiting process of applying percentage of the amount claimed in the pretrial order in the underlying case as an outside limit as compared with the amount settled for, the Court states that all counsel are well aware, as is the Court, that the common practice in settlement cases such as in the underlying case, is that where there is a settlement, unless there is some serious dispute about the amount of the medical payments, those are the first items that are agreed upon between the parties; and the argument goes to the balance. There is no indication in this case in any way, shape or form that there was ever any such disagreement as to the amount of medical expenses. The Court doesn't believe that there was ever any such disagreement; and the Court therefore finds that the full amount of defendant's medical expenses were recovered by defendant's settlement in the underlying case, and that this is the type of recovery that is contemplated by the contractual language in the reimbursement provision entered into between the parties."

The district court also found that Sloan's husband's "injury or sickness was also 'caused' as a result of a third party's 'negligence

or wrong' as those words are used in the reimbursement provision of [Sloan's] Plan."

Sloan appeals.

## SUMMARY JUDGMENT RULING

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." K.S.A. 1993 Supp. 60-256(c).

The record reveals that Sloan did not file an answer to U.S.D. No. 259's summary judgment motion to dispute its list of uncontroverted facts. To defeat a properly supported motion for summary judgment, the nonmovant must come forward with specific, material facts showing there is a genuine issue for trial. *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, 762, 863 P.2d 355 (1992).

There being no material issues of controverted fact here, summary judgment was proper.

## SETTLEMENT AMOUNTS

Sloan argues the district court erred in taking judicial notice of a controverted fact, namely that "the common practice in settlement cases such as in the underlying case, is that where there is a settlement, unless there is some serious dispute about the amount of the medical payments, those are the first items that are agreed upon between the parties." Sloan contends, first, that the amount of money she received as compensation for medical expenses remains unresolved and, second, that she should not be obligated to reimburse the Plan until she is fully compensated for all of her losses.

Sloan argues the district court should not have taken judicial notice of the fact that medical expenses would have been an initial component of the settlement agreements. The Plan itself is silent as to how to prioritize monies received from third parties. Sloan contends the district court improperly granted a priority in favor of the Plan.

Sloan's argument is that in settlement negotiations, medical bills and other items of loss are reduced by a factor related to the risk of litigation before determining the actual amount of the

settlement. Therefore, Sloan asserts that whether she was compensated for all of the medical expenses remains a material question of fact, thereby precluding summary judgment.

Sloan's prayer for relief in her lawsuit against the various chemical companies was in the amount of $1.95 million, which included $55,000 for medical and funeral expenses. She settled for a total sum of $427,500. The Plan had paid her $32,570 in benefits. Two of the settlement agreements she signed obligated her to be "responsible for the payment of all expenses, including but not limited to medical and hospital charges . . . to any person or entity so entitled by contract."

The sum of these two settlements alone was $157,500. Each of the settlement agreements included specific language releasing the chemical companies from any and all claims for costs, damages, and causes of action related to the allegations in the lawsuit.

The Supreme Court of Minnesota faced a similar question in *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699 (Minn. 1983). In that case, Westendorf received injuries in an automobile accident, and her insurer paid medical and hospital expenses in the amount of $22,145.01. Westendorf settled with the third-party tortfeasor for $100,000. The settlement agreement stated that Westendorf's damages greatly exceeded the $100,000 payment and that the money was strictly limited to items of noneconomic loss. Westendorf's insurer subsequently sought reimbursement of the medical benefits it had paid under a reimbursement provision similar to the provision in the present case.

Westendorf made the argument that the reimbursement provision did not apply to the settlement proceeds because no part of that recovery was for medical expenses. The court held as follows:

"If the Westendorfs' claim had gone to a jury trial, then limiting Group Health's right of reimbursement to the member's recovery for medical expense would be reasonable and straightforward. . . . Such an allocation would have been binding on Group Health, which as a result would have been entitled to reimbursement, only 'to the extent of' that allocation, for the reasonable value of the care and services furnished.

"When, however, plaintiffs' claim is settled without a verdict, the application of the reimbursement provision is more problematic. In such a case, any allocation is left to the bargaining of the parties to the tort action, and

it is not surprising if the parties give little solicitude to the reimbursement rights of the health care provider. The enrollee, even though entitled to recover medical expenses from a third party, may elect not to do so. Here, Mr. and Mrs. Westendorf were entitled to recover medical expenses against Kevin and Richard Stasson. They did in fact recover $100,000. They could have allocated $22,000 of that amount to medical expense; or they could have made no allocation at all; or they could, as they did, allocate the entire amount to items of damage other than medical expense. Because the parties to the settlement agreement have characterized their settlement as excluding any damages for medical expenses, it does not follow, however, that this characterization is binding on the HMO provider. The effect of the HMO's reimbursement clause should not depend on a settlement bargain to which it was not privy. The settlement agreement should not be determinative of how the proceeds are allocated.

"Since the allocation of the settlement proceeds here is neither binding nor determinative, we will disregard the allocation in implementing Group Health's reimbursement clause. We also think that it is more appropriate to view a settlement for less than full compensation of plaintiffs' injuries as an undifferentiated recovery than to make a perhaps fruitless attempt to allocate the settlement proceeds in some other fashion. We conclude, therefore, that Group Health's reimbursement clause is by its terms applicable to the settlement proceeds." 330 N.W.2d at 702.

In *Houston v. Kansas Highway Patrol,* 238 Kan. 192, 708 P.2d 533 (1985), Houston settled with a third party and received a lump sum of $40,000. The settlement did not specify the particular elements of damage included therein. Houston argued that he should have been permitted to take certain personal losses not compensable under workers compensation off the top of the settlement, leaving the balance subject to subrogation. The court held that if an injured worker's settlement with a third-party tortfeasor sets aside certain noncompensable losses and the amount is supportable in fact rather than an effort to circumvent operation of the subrogation statute, the worker may be entitled to keep the portion of the settlement attributed to the noncompensable losses. However, the settlement was in bulk and did not specify what amounts were attributable to what expenses. As a result, the Kansas Supreme Court affirmed the district court's decision that the entire settlement was subject to subrogation. 238 Kan. at 196.

Here, we believe the district court's conclusion regarding the medical expenses was supported by the record, and the court's decision is reasonable and logical under the uncontroverted facts

regarding the settlement agreements. The record reflects that Sloan failed to object during the court's ruling. Although Sloan's reply brief suggests that the district court decided the matter without holding a hearing and considering argument on the motion, the record is clear that a hearing was held at which Sloan's counsel was present.

Sloan next argues that the reimbursement provision does not apply to the present case because she has not received a full recovery of her losses, asserting that she only recovered approximately 22% of her losses.

Although Sloan directs this court's attention to *Insurance Co. v. Cosgrove*, 85 Kan. 296, 116 Pac. 819 (1911), *aff'd on rehearing* 86 Kan. 374, 121 Pac. 488 (1912), to support her position, we note that a later case, *Western Fire Ins. Co. v. Phelan*, 179 Kan. 327, 295 P.2d 675 (1956), distinguishes *Cosgrove* and is closer to the facts here. In *Phelan*, Western Fire paid Phelan $1,105, pursuant to its policy, for damages to his automobile as a result of an accident. Phelan subsequently sued the driver of the other car involved in the accident for $1,255 in property damage and $101,334.15 for his personal injuries. Phelan settled his claim for $6,000 because he believed that sum was close to the amount of the other driver's insurance, even though it was only a small part of the amount necessary for total compensation.

Western Fire then sued Phelan for recovery of the $1,105 it had paid in benefits. The trial court found in favor of Western Fire. On appeal, the Kansas Supreme Court distinguished *Cosgrove* by noting that Phelan settled the case without any prior notice to Western Fire. Also, Phelan sought to recover for personal injuries in which Western Fire had no financial interest or responsibility, in addition to the property damage.

The key point in *Phelan* was that the court allowed Western Fire to recover the amount it gave Phelan in benefits, even though Phelan argued that $6,000 was only a small part of the amount necessary to compensate him for his personal injuries and, further, that he was in no way compensated for his automobile.

U.S.D. No. 259 argues that *Phelan* contradicts Sloan's assertion that Kansas law requires full recovery prior to an insurer being reimbursed for amounts paid. U.S.D. No. 259 suggests that this

court should find that Sloan was fully compensated for her loss when she voluntarily settled her case for an amount far exceeding her out-of-pocket costs for medical and funeral expenses. Sloan voluntarily entered into settlement agreements with the various third parties involved without notice to U.S.D. No. 259. While this issue has not yet been addressed specifically in Kansas, there are cases going both ways in other jurisdictions. It is our conclusion that the case of *Higginbotham v. Arkansas Blue Cross and Blue Shield*, 312 Ark. 199, 849 S.W.2d 464 (1993), has a sound basis in logic and reason, and we elect to follow its reasoning.

In *Higginbotham*, Scott Higginbotham was injured in an automobile accident and received $11,482.08 in medical benefits from his father's insurance policy with Blue Cross that was issued through the Arkansas Public School Employees. Higginbotham settled with the other driver for $25,000 pursuant to the other driver's policy limits. The actual amount of Higginbotham's damages was disputed by the parties. 312 Ark. at 200-01.

Subsequently, Blue Cross made demand on Higginbotham for reimbursement of the $11,482.08 pursuant to the following provision:

"In the event any benefits or services of any kind are furnished to you or payment made or credit extended to or on behalf of any covered person for a physical condition or injury caused by a third party or for which a third party may be liable, the Plan shall be subrogated and shall succeed to such covered person's rights of recovery against any such third party to the full extent of the value of any such benefits or services furnished or payments made or credits extended." 312 Ark. at 200.

The trial court found that the $25,000 did not fully compensate Higginbotham for his injuries but that the right of subrogation provided in the insurance contract applied regardless. 312 Ark. at 201.

On appeal, the court considered the approach taken in cases such as *Powell v. Blue Cross and Blue Shield*, 581 So. 2d 772 (Ala. 1990), and *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982), but chose to follow the clear and unambiguous language of the insurance policy. 312 Ark. at 202. The court found that general equitable principles are appropriate to the doctrine of legal subrogation, a right broadly

recognized in the law irrespective of whether there is a provision in the policy itself, "but not where, as here, the right is one of conventional subrogation, that is, subrogation by express agreement between the insured and the insurer." 312 Ark. at 203.

"Without discounting the equitable properties of subrogation, we can conceive of no sound reason why broad principles of equity should be imbued with dominance over clear and specific provisions of a contract agreed to by the parties, at least where public policy considerations are wanting. Language from [an earlier] decision of this court [citations omitted], is pertinent:
'The insurance company had the right to fix the terms and conditions upon which it would insure appellee, and the latter had the right to accept or reject the insurance in these terms and conditions; but, having accepted the same, it was a contract between them, and, being in violation of no principle of law, nor in contravention of the policy of the law, must be enforced according to its terms and meaning; and the courts have the right neither to make contracts for parties, nor to vary their contracts to meet and fulfill some notion of abstract justice, and still less of moral obligation.' "
312 Ark. at 203-04.

The reimbursement provision in the present case may properly be treated as a subrogation clause.

We must next consider whether the trial court erred in determining that, for the purposes of satisfying the Plan's reimbursement provision, Mr. Sloan's illness was caused by a third party's negligence or wrong.

The trial court found that Mr. Sloan's injury was "caused" by a third party's "negligence or wrong" as those words are used in the reimbursement provision. U.S.D. No. 259 argued below that it was clearly intended that the Plan was to be reimbursed for benefits allowed for and paid as a result of injury or sickness when an employee or an eligible dependent later recovers a judgment or settlement from a third party.

Sloan contends on appeal that by concluding that Mr. Sloan's injury was caused by a third party's negligence, the court improperly decided questions of fact. Essentially, Sloan argues that these issues must first be decided by a jury before the reimbursement provision would be applicable.

This court's standard of review is well settled. "The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate

court." *Godfrey v. Chandley*, 248 Kan. 975, 977, 811 P.2d 1248 (1991). "Whether an instrument is ambiguous is a matter of law to be decided by the court." 248 Kan. at 977. This court's review of questions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

The terms of an insurance policy are subject to construction by an appellate court only if the terms at issue can be deemed open to different interpretations. See *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, 35, 744 P.2d 840 (1987). However, courts should not strain to create an ambiguity where in common sense there is none. *Bell v. Patrons Mut. Ins. Ass'n*, 15 Kan. App. 2d 791, 794, 816 P.2d 407, *rev. denied* 249 Kan. 775 (1991). The policy language must be given its plain, ordinary meaning. *Central Security Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 333, 681 P.2d 15 (1984). "Policies must be construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary and popular sense." *Bramlett v. State Farm Mutual Ins. Co.*, 205 Kan. 128, 130, 468 P.2d 157 (1970).

To be ambiguous, a provision must contain language of conflicting or doubtful meaning, as gleaned from a natural and reasonable interpretation of its language. See *American Media, Inc. v. Home Indemnity Co.*, 232 Kan. 737, 740, 658 P.2d 1015 (1983). The reimbursement provision is clear and unambiguous.

"In construing an insurance policy a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter and the purpose to be accomplished." *Bramlett*, 205 Kan. at 130. Interpreting the provision to require U.S.D. No. 259 to independently prove that the chemical companies were the direct and proximate cause of Mr. Sloan's illness would frustrate the purpose of the provision, for liability is rarely, if ever, admitted in a settlement agreement. U.S.D. No. 259 argues that a reasonable construction of the provision, in light of its underlying purpose, would find that the implied and express terms of the clause were met when Sloan recovered $427,500 through settlement agreements with the various chemical companies.

Sloan herself believed that the companies' wrongful, negligent actions had caused her husband's illness, and Sloan contended that her lawsuit would prove "that the non-Hodgkins lymphoma that caused [Mr. Sloan's] death was caused by his exposure to 2,4-D and 2,4,5-T, including products sold by the defendants."

The trial court did not err in determining, for purposes of applicability of the reimbursement provision, that the chemical companies wrongfully or negligently caused Mr. Sloan's death.

Finally, Sloan argues U.S.D. No. 259 should be precluded from enforcing the reimbursement provision because public policy prohibits such reimbursement.

K.S.A. 40-202 exempts certain lodges, societies, persons, and associations from coverage under the state insurance code. The statute provides in relevant part: "Nothing contained in this code shall apply to . . . the employees of a particular person, firm, or corporation."

K.A.R. 40-1-20 provides: "An insurance company shall not issue contracts of insurance in Kansas containing a 'subrogation' clause applicable to coverages providing for reimbursement of medical, surgical, hospital or funeral expenses." The district court concluded that this provision was inapplicable to U.S.D. No. 259, as it was exempt from the jurisdiction and regulation of the Kansas Insurance Department.

Coverage under the Plan in the present case is afforded to employees of the school district and extends to their eligible dependents. The Plan does not operate for profit. Steve Imber, chief attorney for the Kansas Insurance Department, stated in a letter that U.S.D. No. 259's "health and dental care plan is only available to individuals employed by U.S.D. No. 259. Accordingly, it would appear that based on the information you have provided us, the above plan appears to be a single employer self-funded plan and exempt from our jurisdiction pursuant to K.S.A. 40-202." The Plan was first instituted in 1981 and has been exempt from regulation since its inception.

The district court correctly concluded as a matter of law that the Plan in the present case is exempt from the jurisdiction and regulation of the Kansas Insurance Department. Thus, K.A.R. 40-1-20 is inapplicable to the reimbursement provision at issue.

As far as public policy in general, the legislature purposefully chose to exempt certain insurance organizations, such as the Plan in the present case, from regulations such as K.A.R. 40-1-20. Also, insurance companies are allowed similar reimbursement rights in the contexts of workers compensation, K.S.A. 44-504(a) and (b); PIP benefits, K.S.A. 40-3113a; and uninsured motorist benefits, K.S.A. 40-287. See *Durrett v. Bryan*, 14 Kan. App. 2d 723, 729-30, 799 P.2d 110 (1990), *rev. denied* 248 Kan. 995 (1991). Sloan has failed to show that such a provision is prohibited by the public policy of the state of Kansas.

Affirmed.