John W. Campbell, General Counsel Kansas Insurance Department 420 SW 9th Street Topeka, Kansas 66612
Dear Mr. Campbell:
As counsel for the Kansas Insurance Department (KID), you request our opinion on an issue involving K.S.A. 40-2215 and the recent amendment to the Kansas Constitution regarding marital and non-marital relationships. Specifically, you ask whether the approval by the Commissioner of Insurance (Commissioner), pursuant to K.S.A. 40-2215, of an insurance policy form providing benefits to unmarried domestic partners constitutes state recognition of a relationship proscribed by Art. 15, § 16, of the Kansas Constitution.
The recent amendment to the Kansas Constitution, Article 15, § 16, (hereinafter referred to as the Marriage Amendment) provides as follows:
 "(a) The marriage contract is to be considered in law as a civil contract. Marriage shall be constituted by one man and one woman only. All other marriages are declared to be contrary to the public policy of this state and are void.
 "(b) No relationship, other than a marriage, shall be recognized by the state as entitling the parties to the rights or incidents of marriage."
Subsection (a) of the Marriage Amendment mirrors K.S.A. 2006 Supp.23-101, defining a marriage contract "as a civil contract between two parties who are of opposite sex."
You indicate that an insurer has filed for the Commissioner's approval, pursuant to K.S.A. 40-2215, a policy rider extending coverage to domestic partners and defining a domestic partner as:
 "An opposite or same sex partner who has met all the following requirements for at least 12 months: (1) resides with the insured; (2) shares financial assets and obligations with the insured; (3) is not related by blood to the Insured to a degree of closeness that would prohibit a legal marriage; (4) is at least the age of 18; and (5) neither the insured or Domestic Partner is married to anyone else, nor has any other Domestic Partner."[1]
However, the insurer later modified its filing and defined domestic partners as:
 "Persons who either, can provide documentation of registration of the Domestic Partner relationship pursuant to a state, county or municipal provision, or can meet the following qualifications: (1) have resided with each other continuously for at least 12 months in a sole-partner relationship that is intended to be permanent; (2) are not married to any other person; (3) are at least 18 years old; (4) are not related to each other by blood closer than would bar marriage per state law; and (5) are financially interdependent as can be documented by copies of joint home ownership or lease, common bank accounts, credit cards, investments, or insurance."[2]
Pursuant to K.S.A. 40-2215(a) and (b), an individual or group insurance policy form[3] providing accident and sickness benefits must be filed with the Commissioner before it is issued or delivered to any person in Kansas. Under subsection (c), the Commissioner must give written approval of such form within 30 days after it is filed; if not, the policy form is deemed approved at the expiration of 30 days from the filing date. However, the Commissioner's authority to approve a policy under subsection (c) must be read in conjunction with subsection (d).
K.S.A. 40-2215(d) provides that:
 "The commissioner may, within 30 days after the filing of any form, disapprove such form: (1) If, in the case of any form required to be filed pursuant to subsection (a) [an individual policy], the benefits provided therein are unreasonable in relation to the premium charged; or (2) if, in the case of any form required to be filed pursuant to subsection (a) [an individual policy] or (b) [a group policy], it contains a provision or provisions which are unjust, unfair, inequitable, misleading or deceptive or encourage misrepresentation of such policy. If the commissioner notifies the insurer which has filed any such form that it does not comply with the provisions of article 22 of chapter 40 of the Kansas Statutes Annotated, and amendments thereto, it shall be unlawful thereafter for such insurer to issue such form or use it in connection with any policy. In such notice the commissioner shall specify the reasons for disapproval and state that a hearing will be granted within 20 days after request in writing by the insurer."
The Commissioner, as the chief officer of the KID, is charged with the administration of the laws regulating insurance.[4] KID is a creature of statute, and, as such, both the agency and the Commissioner's power are dependent upon authorizing statutes.[5] Therefore, as K.S.A.40-2215(d) limits the grounds for disapproval of a policy form to those enunciated in the statute, it is our opinion that the Commissioner cannot disapprove a policy form on the basis that it conflicts with a provision in the Kansas Constitution. Conversely, approval by the Commissioner indicates only that the policy form complies with the criteria in the statute and does not represent a state sanction or recognition of a constitutionally proscribed relationship.
We also note that the legislature did not intend the Marriage Amendment to apply to private insurance contracts. Representative Jan Pauls, who favored the Marriage Amendment, testified that subsection (b) prohibited the State from providing marital benefits for non-marital relationships and compelling others to treat non-marital relationships as the equivalent of marriage.[6] According to Representative Pauls, no employer could be forced to offer insurance benefits to non-marital couples, but private employers could voluntarily offer such benefits. She also said the Marriage Amendment "would not remove any rights that any Kansas citizen presently holds."[7]
Professor Kris Kobach, a constitutional law professor at the University of Missouri-Kansas City, testified that subsection (b) of the Marriage Amendment only applied "to rights and incidents of marriage conveyed by `the state'" and did "not limit contractual or legal arrangements between private parties."[8] He continued:
 "In other words, private contracts that offer benefits similar to those offered to married couples are in no way prohibited by [the Marriage Amendment]. For example, an employer could offer health benefits to gay partners of employees without contravening [the Marriage Amendment] in any respect. When such a private contract is made, it does not constitute `recognition by the state.' The state has not acted in any way. [A] right or incident of marriage is something that is automatically triggered when a marriage exists. It is something that has been positively identified by statute or court decision. [The Marriage Amendment] in no way prohibits a gay couple from executing a will. . . . [In] other words, . . . contractual or private legal arrangements are not `rights or incidents of marriage,' because they do not come into existence automatically under state law as soon as a marriage exists."[9]
Based upon the above statutory provisions and the history of the Marriage Amendment, it is our opinion that the Commissioner's approval, pursuant to K.S.A. 40-2215, of an insurance policy form providing accident and sickness benefits to unmarried domestic partners does not constitute state recognition of a relationship proscribed by Art. 15, § 16 of the Kansas Constitution.
Sincerely,
Paul J. Morrison Attorney General
Janet L. Arndt Assistant Attorney General
PJM:MF:JLA:jm
[1] Campbell opinion request letter dated July 9, 2007.
[2] Id.
[3] These provisions apply to the application, rider, endorsement, classification of risks, and premium rates used in connection with the policy, but for brevity we will refer to a policy form.
[4] K.S.A. 40-102.
[5] Durrett v. Bryan, 14 Kan.App.2d 723, 726-27 (1990), rev.denied, 248 Kan. 995 (1991).
[6] Attorney General Opinion 2007-9.
[7] Id.
[8] Attorney General Opinion No. 2007-9.
[9] Id.