IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,046

TIMOTHY TOWNE,
on Behalf of Himself and All Others Similarly Situated,
*Appellant/Cross-Appellee*,

v.

UNIFIED SCHOOL DISTRICT NO. 259, d/b/a THE WICHITA PUBLIC SCHOOLS and
UNIFIED SCHOOL DISTRICT NO. 259, d/b/a THE WICHITA PUBLIC SCHOOLS BASE PLAN,
*Appellees/Cross-Appellants.*

SYLLABUS BY THE COURT

1.

When reviewing a motion to dismiss for failure to state a claim, courts do not evaluate the strength of the plaintiff's position, but rather whether the petition has alleged facts that may support a claim on either the petition's stated theory or any other possible theory.

2.

K.S.A. 40-202(b) exempts the "*employees* of a particular person, firm, or corporation" from regulation under the Insurance Code of the state of Kansas, K.S.A. 40-101 et seq. This provision does not exempt self-insured school districts from regulation under the Code. The holding of *U.S.D. No. 259 v. Sloan*, 19 Kan. App. 2d 445, 871 P.2d 861 (1994), to the contrary is overruled.

3.

Under the facts of this case, the medical benefit plan offered by U.S.D. No. 259 is a "health benefit plan" under K.S.A. 40-4602(c) because it is a "hospital or medical

1

expense policy." An entity that chooses to self-insure under K.S.A. 72-1891 can still be said to offer a "health benefit plan," as that statute plainly contemplates a self-insurer will "provide health care services."

4.

Under the facts of this case, U.S.D. No. 259 is a "health insurer" under K.S.A. 40-4602(d) because it is an "entity which offers a health benefit plan subject to the Kansas Statutes Annotated."

5.

Under the facts of this case, K.A.R. 40-1-20 applies to U.S.D. No. 259's self-funded Plan.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 21, 2022. Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Oral argument held September 14, 2023. Opinion filed January 5, 2024. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded.

*Troy H. Gott*, of Brennan Gott Law, PA, of Wichita, argued the cause and was on the briefs for appellant.

*Ryan K. Meyer*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *William P. Tretbar* and *Lyndon W. Vix*, of the same firm, were with him on the briefs for appellees.

*James R. Howell* and *Jakob Provo*, of Prochaska, Howell & Prochaska LLC, of Wichita, were on the brief for amicus curiae Kansas Trial Lawyers Association.

The opinion of the court was delivered by

STEGALL, J.: Unified School District No. 259 (U.S.D. 259) in Sedgwick County administers a medical benefit plan (the Plan) for its employees. The Plan is a single

2

employer, self-funded plan as authorized by K.S.A. 72-1891, which allows a school district to choose to "act as a self-insurer to provide health care services" for its employees. Meritain Health, Inc., (Aetna) is the third-party administrator for the Plan. The Plan's provider network is through Aetna, and Aetna vets and adjusts claims made by Plan participants. The Plan contains a subrogation clause requiring participants to repay any amounts initially paid by the Plan but later recovered from a third party by the participant.

Timothy Towne, an employee of U.S.D. 259, was injured in a car wreck, and the Plan covered a portion of his medical expenses. Towne then recovered from a third-party and U.S.D. 259 required Towne to reimburse the Plan $1,705.20. Towne acquiesced, then filed a breach of contract claim against U.S.D. 259, arguing that K.A.R. 40-1-20 renders the subrogation clause unenforceable. K.A.R. 40-1-20 provides: "No insurance company or health insurer, as defined in K.S.A. 40-4602 and amendments thereto, may issue any contract or certificate of insurance in Kansas containing a subrogation clause . . . applicable to coverages providing for reimbursement of medical, surgical, hospital, or funeral expenses."

U.S.D. 259 argued below (and reprises these arguments before us) that the lower courts did not have subject matter jurisdiction over Towne's claim because Towne cannot bring a breach of contract action when U.S.D. 259 was enforcing an express provision in the Plan. It also argued that K.S.A. 40-202(b) exempts the Plan from any regulation under the Kansas Insurance Code. Lastly, it claimed that even if the Plan is not exempted from regulation, U.S.D. 259 is not a "health insurer" nor is the Plan a "health benefit plan" as those terms are defined in K.S.A. 40-4602. Hence, the anti-subrogation regulation does not apply.

The district court dismissed Towne's claim after concluding that K.S.A. 40-202 exempts U.S.D. 259's Plan from regulation by the Kansas Insurance Code, K.S.A. 40-101 et seq., and in any event, that the Plan is not a "health benefit plan" as that term is defined in K.S.A. 40-4602. The Court of Appeals affirmed.

We granted Towne's petition for review and U.S.D. 259's conditional cross-petition and, today, we reverse the lower courts and hold K.S.A. 40-202(b) does not exempt self-funded plans from regulation by the Insurance Code. Moreover, we find the Plan is a "health benefit plan" under K.S.A. 40-4602, which makes U.S.D. 259 a "health insurer" subject to the anti-subrogation regulation.

DISCUSSION

Towne styled the sole claim in his petition as one for breach of contract. U.S.D. 259 protests this characterization, insisting Towne's so-called "breach of contract" claim should be dismissed for lack of subject matter jurisdiction because it is in reality a disguised attempt at private enforcement of K.A.R. 40-1-20 where no private right of action exists.

Subject matter jurisdiction establishes a court's power to hear and decide a particular type of action. *Miller v. Glacier Development Co.*, 293 Kan. 665, 669, 270 P.3d 1065 (2011). The existence of subject matter jurisdiction cannot be waived, and its nonexistence may be challenged at any time. *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016). Whether subject matter jurisdiction exists is a question of law over which we exercise unlimited review. *Kansas Fire and Safety Equipment v. City of Topeka*, 317 Kan. 418, 435, 531 P.3d 504 (2023).

U.S.D. 259 relies on *Jahnke v. Blue Cross & Blue Shield of Kansas*, 51 Kan. App. 2d 678, 353 P.3d 455 (2015), to support its argument. There, Jahnke sued Blue Cross and

4

Blue Shield of Kansas Inc. (BCBS) after it failed to pay for Jahnke's brain tumor surgery. The BCBS policy provided it would not pay benefits for tumors until a 240-day waiting period had passed, and Jahnke's surgery occurred 11 days before the waiting period expired. Jahnke's petition alleged that the BCBS policy violated a Kansas statute that prohibits small employers from having a waiting period longer than 90 days. Notably, Jahnke's petition was not styled as a breach of contract action; rather, it was premised solely on BCBS's violation of the statute.

It was not until the case reached the Court of Appeals and the question of subject matter jurisdiction was raised that Jahnke's estate claimed the petition was actually a simple breach of contract action. The panel examined the pleadings and the record of evidentiary hearings, and observed that at all points Jahnke alleged only a violation of a statute rather than a breach of contract. 51 Kan. App. 2d at 679-97. Because there was no private right of action in the statute, the panel dismissed the case for failure of jurisdiction. 51 Kan. App. 2d at 697 ("[T]he legislature provided no express or implied private cause of action. Because neither this court nor the district court has subject matter jurisdiction over the Jahnkes' direct action in court, we must dismiss this appeal and vacate the judgment entered by the district court.").

The fact that Towne has claimed from the start that U.S.D. 259 breached its contract with him instantly distinguishes *Jahnke*. U.S.D. 259 objects that if we permit Towne's breach of contract claim to go forward, then any contractual provision in violation of the law could become a breach of contract. Perhaps this is so, and if it is, we do not share the school district's sense of dismay at this outcome. But that is not the question before us. Rather, the question is more simply and straightforwardly whether Kansas courts have jurisdiction to hear breach of contract claims. Plainly, we do. See, e.g., *Peterson v. Ferrell*, 302 Kan. 99, 104, 349 P.3d 1269 (2015) (unlimited review when interpreting and determining the legal effect of contracts); *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012) (unlimited review over the existence and terms

5

of an oral contract); *Frazier v. Goudschaal*, 296 Kan. 730, 745, 295 P.3d 542 (2013) ("[A] court may exercise its jurisdiction over a contractual dispute in order to evaluate the contract's legality.").

Any contract claim may fail for any number of reasons, and the same can be said of the contract claim made in this case. But that does not mean courts do not have jurisdiction to hear them. 296 Kan. at 743 ("Which party should win a lawsuit is an altogether different question from that of whether the court has the power to say who wins."). Indeed, the Plan contains a severability clause which provides that if any section of the contract is held invalid or illegal, it "shall not affect the remaining sections" and the "Plan shall be construed and enforced as if such invalid or illegal sections had never been inserted in the Plan." Should the subrogation clause be held invalid or otherwise unenforceable, the contract itself remains. And Towne argues that requiring him to refund $1,705.20 to U.S.D. 259 for qualified medical expenses puts U.S.D. 259 in breach of its obligations under the Plan. These are the ordinary sorts of contract disputes regularly adjudicated by Kansas courts applying common-law rules. See *David v. Hett*, 293 Kan. 679, 691, 270 P.3d 1102 (2011) ("[A] breach of contract claim is a material failure to perform a duty arising under or imposed by agreement."); see also *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 831, 934 P.2d 65 (1997) ("When an insurer wrongfully denies coverage, the insurer breaches an express contract provision.").

We turn now to the merits of Towne's appeal. At this stage of the litigation—a motion to dismiss for failure to state a claim in the district court—it is not so much about the strength of Towne's position, but rather whether his petition has alleged facts that may support a claim on either his stated theory "or any other possible theory." *Cohen v. Battaglia*, 296 Kan. 542, 546, 293 P.3d 752 (2013). Crucial to this question is whether the Plan is subject to the Kansas Insurance Code. If it is not, Towne has not stated a breach of contract claim under any theory. If it is, he has.

6

Article 2 of the Kansas Insurance Code contains "General Provisions" that apply to the entire code. One of these general provisions exempts certain entities and individuals from regulation under the code:

"Nothing contained in this code shall apply to:

"(a) Grand or subordinate lodges of any fraternal benefit society which admits to membership only persons engaged in one or more hazardous occupations in the same or similar line of business or to fraternal benefit societies as defined in and organized under article 7 of chapter 40 of the Kansas Statutes Annotated, and amendments thereto, unless they be expressly designated;

"(b) the employees of a particular person, firm, or corporation;

"(c) mercantile associations which simply guarantee insurance to each other in the same lines of trade and do not solicit insurance from the general public;

"(d) the Swedish mutual aid association of Rapp, Osage county, Kansas;

"(e) the Scandia mutual protective insurance company, of Chanute, Kansas;

"(f) the Seneca and St. Benedict mutual fire insurance company of Nemaha county, Kansas;

"(g) the mutual insurance system practiced in the Mennonite church, in accordance with an old custom, either by the congregation themselves or by special associations, of its members in Kansas;

"(h) the Kansas state high-school activities association;

"(i) the mutual aid association of the church of the brethren; or

"(j) a voluntary noncontractual mutual aid arrangement whereby the needs of participants are announced and accommodated through subscriptions to a monthly publication." K.S.A. 40-202.

Subsection (b) is at issue here, which exempts "the employees of a particular person, firm, or corporation" from regulation.

We exercise unlimited review when evaluating questions of statutory or regulatory interpretation. "In this endeavor, we must give effect to the intent expressed by the plain

7

language of the text. This means we give common words their ordinary meanings, without adding to or subtracting from the text as it appears. We only resort to textual construction when the language is ambiguous. [Citations omitted.]" *Central Kansas Medical Center v. Hatesohl*, 308 Kan. 992, 1002, 425 P.3d 1253 (2018).

We likewise exercise unlimited review when determining whether the district court erred by granting a motion to dismiss for failure to state a claim. We must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably be drawn from them. We "then decide[] whether those facts and inferences state a claim based on plaintiff's theory or any other possible theory. If so, the dismissal by the district court must be reversed." *Cohen*, 296 Kan. at 546.

The district court and panel relied on the interpretation of K.S.A. 40-202(b) in *U.S.D. No. 259 v. Sloan*, 19 Kan. App. 2d 445, 454, 871 P.2d 861 (1994), to conclude that K.S.A. 40-202(b) exempts U.S.D. 259 from regulation by the Insurance Code. In *Sloan*, U.S.D. 259 sued Sloan for breach of contract after she settled a wrongful death claim for her husband's death against chemical manufacturers. U.S.D. 259's Plan at that time also contained a subrogation provision, and though it had paid for medical expenses related to Sloan's husband's illness, it had not been reimbursed for those expenses from the settlement funds. The district court granted U.S.D. 259's motion for summary judgment, finding Sloan breached the contract by failing to comply with the subrogation clause.

A panel of the Court of Appeals evaluated whether U.S.D. 259's Plan was subject to regulation by the Kansas Insurance Department. In affirming the district court, the panel first noted that K.S.A. 40-202(b) exempted from regulation "the employees of a particular person, firm, or corporation." 19 Kan. App. 2d at 454. Based on this language, the court concluded that because U.S.D. 259's Plan was "'a single employer self-funded

8

plan,'" K.S.A. 40-202(b) exempted U.S.D. 259's Plan from regulation. 19 Kan. App. 2d at 454. As a result, U.S.D. 259 could enforce the subrogation provision. 19 Kan. App. 2d at 454.

The *Sloan* panel gave the following reasoning for interpreting K.S.A. 40-202(b) in this way:

> "Coverage under the Plan in the present case is afforded to employees of the school district and extends to their eligible dependents. The Plan does not operate for profit. Steve Imber, chief attorney for the Kansas Insurance Department, stated in a letter that U.S.D. No. 259's 'health and dental care plan is *only* available to individuals employed by U.S.D. No. 259. Accordingly, it would appear that based on the information you have provided us, the above plan appears to be a single employer self-funded plan and exempt from our jurisdiction pursuant to K.S.A. 40-202.' The Plan was first instituted in 1981 and has been exempt from regulation since its inception." 19 Kan. App. 2d at 454.

Yet, the plain language of K.S.A. 40-202(b) exempts "employees" from regulation under the code. This exact language has been in this statute for nearly a hundred years, and no other case has attempted to interpret this language. It is not apparent why the *Sloan* panel was so quick to interpret the exemption in (b) for "employees of a particular person, firm, or corporation" to apply to "single employer self-funded" plans. K.S.A. 40-202(b); 19 Kan. App. 2d at 454. Indeed, at oral argument in the instant case even U.S.D. 259's counsel could not offer any reason that would support this interpretation based on the statute's plain language. The *Sloan* panel appears to have relied upon the interpretation of the Insurance Department itself. But we have repeatedly and explicitly rejected the doctrine of deferral to agency interpretations of either statutes or regulations. See, e.g., *May v. Cline*, 304 Kan. 671, 675, 372 P.3d 1242 (2016) ("[W]e have recently resoundingly rejected the doctrine of deference to an agency on questions

9

of law."); *Mera-Hernandez v. U.S.D. 233*, 305 Kan. 1182, 1185, 390 P.3d 875 (2017) (appellate courts give "no deference to the administrative board").

Towne is correct to assert that *Sloan* seems to have taken this statute, which plainly says provisions of the Insurance Code do not apply to individual *employees*, and rewritten it to mean that "it does not apply to the *employer* of the employees." (Emphasis added.) Towne offers a plausible alternative meaning and suggests that exempting "employees" is meant to protect individuals whose employers are subject to the Insurance Code. The Insurance Code requires certain actions and prohibits other actions by insurers. And an insurer that acts in violation of these statutory requirements can be penalized in various ways. K.S.A. 40-202(b) seems to protect individual employees of an insurer that has acted in violation of the code. While this is a common-sense understanding of the language in K.S.A. 40-202(b), the question of what meaning, precisely, the statute has is not in front of us. It is sufficient for today to hold simply that this provision does not exempt the Plan from regulation.

Reading the Insurance Code *in pari materia* strengthens our conclusion. For example, K.S.A. 40-2261(a)—a section of the code which permits certain employers to "also offer a premium only cafeteria plan"—states: "The provisions of this subsection shall not apply to any employer who offers health insurance through any self-insured or self-funded group health benefit plan of any type or description." This exemption contained in a specific section of the Code would be unnecessary if the Legislature intended for K.S.A. 40-202(b) to entirely exempt self-funded employer plans from any regulation.

In sum, we find the plain language of K.S.A. 40-202(b) that exempts "employees of a particular person, firm, or corporation" does not include single employer self-funded plans. In other words, the Plan is regulated by the Code. The contrary holding of *Sloan* is overruled.

10

U.S.D. 259 also seeks to escape regulation under the Code by claiming its Plan is not a "health benefit plan" and it is not a "health insurer." These terms appear in the Patient Protection Act, K.S.A. 40-4601 et seq. (the Kansas counterpart to HIPAA), and K.A.R. 40-1-20 adopts these definitions. These definitions have also been adopted for general use in the Insurance Code. See K.S.A. 40-2,186(b)-(c).

> "'Health benefit plan' means any hospital or medical expense policy, health, hospital or medical service corporation contract, a plan provided by a municipal group-funded pool, a policy or agreement entered into by a health insurer or a health maintenance organization contract offered by an employer or any certificate issued under any such policies, contracts or plans. . . .

> "'Health insurer' means any insurance company, nonprofit medical and hospital service corporation, municipal group-funded pool, fraternal benefit society, health maintenance organization, or any other entity which offers a health benefit plan subject to the Kansas Statutes Annotated." K.S.A. 40-4602(c)-(d).

Because a school district or a self-insured entity is not specifically enumerated in the list of entities that qualify as a "health insurer," Towne relies on the residual clause in that definition—"any other entity which offers a health benefit plan"—to argue that U.S.D. 259 should be considered a health insurer. U.S.D. 259 counters that because the Legislature chose, in its definition of "health insurer" in K.S.A. 40-4602(d), to omit any reference to "self-insurers," the maxim of *expressio unius est exclusio alterius*—i.e., the inclusion of one thing implies the exclusion of another—demonstrates that this omission was intentional. See *Bruce v. Kelly*, 316 Kan. 218, 233, 514 P.3d 1007 (2022).

Yet application of this maxim is not appropriate given that the statute includes a residual clause in subsection (d) which defines "any other entity which offers a health benefit plan subject to the Kansas Statutes Annotated" as a health insurer. It therefore

becomes necessary to determine whether the Plan offered by U.S.D. 259 qualifies as a "health benefit plan." If it is, then U.S.D. 259 is a health insurer.

Recall that the statutory language defines a "health benefit plan" as, among other things, a "hospital or medical expense policy." K.S.A. 40-4602(c). Upon evaluating the Plan document itself, U.S.D. 259's argument that the Plan is not a "health benefit plan" is strained at best. The Plan includes a "Medical Schedule of Benefits" chart showing the amount covered depending on if the service is provided by a participating or non-participating provider. This chart includes the deductible amounts, as well as information on coverage of a laundry list of medical procedures and events, such as inpatient and outpatient hospital expenses, chemotherapy, chiropractic care, mammograms, colonoscopies, X-rays and diagnostic testing, ambulance services, emergency room visits, hospice care, maternity care, and many others.

The Plan document also provides a "General Overview of the Plan" which discusses various features of the Plan. For example, it discusses costs and informs the participant that he or she "must pay for a certain portion of the cost of Covered Expenses under the Plan, including (as applicable) any Copay, Deductible and Coinsurance percentage that is not paid by the Plan, up to the Out-of-Pocket Maximum set by the Plan." It similarly discusses additional details on coinsurance, copay, deductibles, and out-of-pocket maximums. Moreover, the "Plan Description" booklet at times utilizes the defined term "Plan benefits," which the booklet defines as "the medical services, hospital services, and other services and care to which a Plan participant is entitled."

These features of the Plan—particularly the fact that it includes a schedule of medical benefits and acknowledges that the Plan is designed to provide medical and hospital services to participants—easily leads us to conclude that the Plan is a "hospital or medical expense policy" such that it should be considered a "health benefit plan." See K.S.A. 40-4602(c).

12

U.S.D. 259's main argument that the Plan is not a "health benefit plan" hinges on the fact that the school district has elected to act as a self-insurer under K.S.A. 72-1891. U.S.D. 259 points to the structure of K.S.A. 72-1891, which gives a school district three options for how it may provide health care services to its employees. Under this statute, a school district may:

1. "[P]rocure contracts insuring its certificated employees and other employees or any class or classes thereof under a policy or policies of group life, group health, disability income, accident, accidental death and dismemberment, and hospital, surgical, and medical expense insurance"; or
2. "[P]rocure contracts with health maintenance organizations;" or
3. "[A]ct as a self-insurer to provide health care services and disability income benefits for such employees." K.S.A. 72-1891.

U.S.D. 259 maintains that because it chose the third option to self-insure—rather than procuring a policy with an insurance company—the Plan is therefore "not a 'hospital or medical expense policy.'" Yet as described above, the Plan document is just that—a policy providing hospital or medical benefits. And though U.S.D. 259 chose to self-insure under K.S.A. 72-1891, that statute still contemplates a self-insurer will "provide health care services."

We thus conclude that U.S.D. 259's Plan is a "health benefit plan" under K.S.A. 40-4602(c) because it is a "hospital or medical expense policy." This in turn makes U.S.D. 259 a "health insurer" because it is an "entity which offers a health benefit plan *subject to the Kansas Statutes Annotated*." (Emphasis added.) K.S.A. 40-4602(d). The latter half of this phrase is certainly broad enough to capture entities like U.S.D. 259 which self-insure but do so under the authority and direction of the governing statutes contained in other sections of the Kansas Statutes Annotated. See, e.g., K.S.A. 72-

1893(a) (providing that a self-insured school district "shall make payments for claims, judgments and expenses for health care services . . . from the special reserve fund of the school district."); K.S.A. 72-1894(a) (authorizing a self-insured school district to "transfer moneys from its general fund to the special reserve fund").

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded.

BILES, J., not participating.