MARYLAND CASUALTY COMPANY *v.* CHEW.

Opinion delivered November 15, 1909.

1. DEPOSITION—RIGHT TO READ ADVERSARY'S.—A party has no right to read a deposition taken by his adversary which, though filed and published, the latter never offered in evidence, where there was no agreement that it should be read in evidence. (Page 283.)

2. INSURANCE—ACCIDENT POLICY—INSTRUCTION.—Where the amount of indemnity that one holding an accident policy was entitled to receive depended upon his occupation, and he sued as a cotton factor, and there was evidence tending to prove that he was a "supervising farmer" at the time of the accident, and therefore not entitled to recover as much as he would have been entitled to if he had been only a cotton factor, an instruction which ignored the evidence as to his being a "supervising farmer" was erroneous. (Page 283.)

3. SAME—ACCIDENT POLICY—TOTAL DISABILITY.—Where an indemnity policy insured a cotton factor, one only of whose duties was to sample cotton, it was error for the court in its instructions to assume that insured was totally disabled by reason of his inability to sample cotton. (Page 283.)

4. SAME—ACCIDENT POLICY—AGGRAVATION OF INJURY.—Damages are not recoverable under an accident policy on account of an extension of the injury occasioned by the assured's failure to observe the directions of his physician. (Page 286.)

Appeal from Phillips Circuit Court; *Hance N. Hutton,* Judge; reversed.

*M. L. Stephenson,* for appellant.

1. The statement of warranties was a part of the contract, and appellee was bound by it. 29 Ind. 568; 33 N. E. 106;

58 Ark. 528; 65 Ark. 295; 1 May on Ins. 335; 49 S. W. 153; 53 N. Y. 603; 19 L. R. A. (N. S.) 798. Misrepresentation by the assured as to his occupation avoids the policy. 62 N. W. 1057; 65 Ark. 295.

2. It was error to permit the appellee to read as evidence to the jury the deposition of Dr. Smythe over the objection of appellant, the same having been taken on the part of appellant after notice given, and not offered by appellant; and the fact that it was taken on interrogatories to which appellee appended cross-interrogatories did not authorize its admission over appellant's objection. 15 Ark. 351; 85 Ark. 390. Its introduction was prejudicial. 69 Ark. 648; 77 Ark. 431; 148 U. S. 673; 119 U. S. 103; 17 Wall. 630; 5 Wall. 795; 110 U. S. 47.

3. Appellant should have been permitted to question the appellee as to what instructions, if any, were given him by the surgeon. It was material for the purpose of showing whether or not he had taken proper care of himself to obtain relief from the disability, which was a question for the jury. It was his duty in this respect to obey reasonable instructions of the physician. 46 Ark. 206; 78 N. W. 227.

4. The policy of insurance is the contract sued upon, and under its terms appellee must recover, if at all. This policy covers both partial and total disability, and the second instruction is manifestly wrong. 1 Cyc. 269; 3 N. W. 237; 64 N. W. 1039, 1041; 43 Ill. App. 148; 138 Pa. 595; 13 Ind. App. 539; 65 Ark. 295; 17 S. E. 982; 74 N. Y. 23; 49 U. S. (8 How.) 28. That part of the instruction authorizing a verdict if he was unable to sample cotton was in effect a peremptory instruction to the jury to disregard the evidence offered by appellant of disinterested, unimpeached witnesses. 84 Ark. 57. It practically instructed them to disregard the evidence and the terms of the contract, and allows a total disability recovery for a partial disability. 1 L. R. A. 700; 33 N. E. 105; 149 Mass. 457; 138 Fed. 629; 65 Ark. 299.

5. In view of appellee's own admissions, and of uncontradicted testimony of witnesses that he was engaged in another occupation besides that of cotton factor at the time the policy was issued, appellant's request for a peremptory instruction in its favor should have been granted. 67 Ark. 514; 117 S. W.

788; 138 Fed. 629, 637; 65 Ark. 295, 300; 56 Ark. 53, 55; 19 L. R. A. (N. S.) 798, 802.

*R. W. Nicholls* and *Moore & Vineyard,* for appellee.

1. The question as to whether or not there was a breach of warranty is settled by the verdict of the jury under the evidence and proper instructions.

2. If it be conceded that the deposition of Dr. Smythe was improperly admitted, no prejudice resulted, the verdict being amply supported by other evidence. 63 Ark. 134, 137; 77 Ark. 431; *Id.* 453; 73 Ark. 407; 74 Ark. 417; 76 Ark. 276.

3. The court properly refused to permit appellant to question appellee as to the physician's instructions. Appellant had taken Dr. Smythe's deposition, and by that deposition could have shown all the facts.

4. The court would not have been warranted in directing a verdict for appellant unless there had been a total want of testimony on the part of the appellee.

The test is not so much whether the assured had in fact abandoned the occupation stated in the application and policy, but whether or not *at the time of the injury* he was in fact engaged in another occupation, not merely incidental, but as a business, of a more hazardous classification. 138 Fed. 635.

BATTLE, J. Frank H. Chew brought an action against Maryland Casualty Company. Complaining, he alleges in his complaint substantially as follows:

On the 29th day of May, 1906, the defendant, in consideration of $25 received by it, did issue and deliver to him a certain policy of insurance, and thereby insured him in the principal sum of $5,000, and for a weekly indemnity of $25, for a period of twelve months from May 28, 1906, against bodily injuries not intentionally self-inflicted, sustained by the assured, while sane and effected directly and independently of all other causes through external, violent and accidental means.

Among other provisions in the policy is the following:

"If such injuries shall not result in any of the disabilities mentioned in section 1, and shall immediately, continuously and wholly disable the assured from performing any and every kind of duty pertaining to his occupation, the company will pay him

for the period of such total disability the weekly indemnity above specified, but to an amount not exceeding the principal sum."

On the 8th day of April, 1907, while the policy was in full force and effect, plaintiff, Chew, was injured by the accidental discharge of a pistol, the bullet entering his right breast, and causing total, complete and permanent paralysis of his right arm, thereby immediately, continuously and wholly disabling him from performing any and every kind of duty pertaining to his occupation. He alleged that he was entitled to recover $650 on the policy for indemnity against loss on account of the accident; and asked for judgment for that amount.

The defendant, the Maryland Casualty Company, denied the foregoing allegations. It stated the facts to be substantially as follows: On the 29th of May, 1906, plaintiff made an application to it for a policy of insurance, making certain warranties. In consideration of the sum of $25 and of the application and warranties, it issued the policy sued on. He represented himself to be engaged in the occupation of a cotton factor, but at the time he made this application and these warranties he was not so engaged, but in another and additional and more hazardous occupation, and by reason thereof the policy is void, and was of no force and effect on the 8th day of April, 1907, when the alleged accident occurred.

One of the provisions of the policy is as follows: "If the assured is injured fatally or otherwise in any occupation classified by this company as more . dangerous than that stated in the schedule of warranties indorsed hereon, the company's liability shall be only for such proportion of the principal sum or other indemnity provided for herein as the premium paid by him will purchase at the rates fixed by the company for such increased hazard."

At the time of and prior to the accident, plaintiff was engaged in the occupation of "supervising farmer," in addition to that of cotton factor, and as a separate business, which is classified by the defendant as more hazardous than that of cotton factor, and under the policy he is not entitled to the indemnity he claims as cotton factor, but as before stated.

Plaintiff, Chew, did not use due diligence to secure the recovery of his arm.

In the trial of the issues in the case the policy sued on was adduced and read as evidence. It contained the provisions set out in the pleadings and the following in addition to others:

"No. 2. Or, if such injuries shall not result in any of the disabilities mentioned in section 1 and shall immediately, continuously and wholly disable and prevent the assured from performing any and every kind of duty pertaining to his occupation, the company will pay him for the period of such total disability the weekly indemnity above specified, but to an amount not exceeding the principal sum; or, if such injuries shall not wholly disable the assured as above, but shall immediately, continuously and wholly disable and prevent him from performing one or more important daily duties pertaining to his occupation, the company will pay one-half the weekly indemnity above specified for the period of such partial disability, not exceeding twenty-six consecutive weeks from the date of injury; or, if such partial disability shall follow a period of total disability, the indemnity provided for partial disability shall be paid, but not for more than twenty-six weeks; nor shall the company be liable under the provisions of sections 1 and 2 for a sum greater than the principal sum."

Contained in the policy is a schedule of warranties, which in part are as follows: "I am F. H. Chew, of Helena, Ark., whose business is that of cotton factor. The duties of my occupation are fully described as follows: office work; classified as select."

The deposition of Dr. F. D. Smythe, which was taken by the defendant to be used as evidence in its behalf in the trial of this cause, was read as evidence by plaintiff in the trial, over the objection of the defendant:

The following extracts were parts of the deposition:

"The patient's general condition was bad when he reached the hospital, and the idea of operating at once was not entertained, owing to the location of the injury, also its recent occurrence. I felt that life would be jeopardized by operating at that time, and so advised him. He left the hospital for his home, and I informed him that the only chance for restoration of function of the arm was by a performance of the operation for deuteropathy or nerve suffering; that the operation in this case

was not without risk, and at the same time I could not assure him of success attending my efforts, but, as it offered him the only hope of regaining the use of his arm, I advised him to take the chance. Some months later he called to see me, his arm being in about the same condition except the atrophy advanced somewhat. He had slight use of some of his fingers and thumb, but not sufficient to be of any possible use. I talked with Mr. Chew, and advised him of the importance of having the operation performed. I told him I did not think he should delay having it done. He asked me concerning Doctor Murphy of Chicago, and I stated to him that Doctor Murphy had perhaps had more experience in nerve surgery than any surgeon in America, and that he could not go to a better man. My experience in this particular line of work has been limited. The operation can be performed successfully many months and even years, after the injury, without injury, though it requires a longer time, to restore function in case it has been long delayed. He will remain permanently injured unless a successful operation should be performed upon him. There is no assurance that the operation will be followed by a successful result, but the chances are sufficiently promising to justify the operation."

"The patient was advised to report occasionally for examination, in order that the operation might be performed at the earliest possible moment with safety. I did not see or hear from him for some time after he left the hospital. There was no treatment that could influence his case, except surgical treatment, and all that could be done was to advise his physician to look after him in a general way. The patient was informed that the operation was associated with danger in his case, due to the location of the injury and the large and important blood vessels so closely related to the injured nerves. The patient was advised of such danger.

"I advised the patent, if I remember correctly, that an attempt to suture the nerve should be made as soon as he could be gotten in condition for its safe undertaking, and that if we failed to succeed his arm would be in no worse condition than if left unmolested, and that, inasmuch as there was a reasonably fair chance of success following the operation, I thought that the proper course. I do not remember whether or not I urged

the operation. I know I did not urge him to have it performed by myself. I merely told him that I would do the operation if he was willing to have same performed."

The following instruction was given at the instance of plaintiff over the objection of the defendant:

"The jury is further instructed that the words 'total disability' mean that the plaintiff was disabled from prosecuting his business as a cotton factor; that he was not able to prosecute his business as such unless he was able to do and perform all of the substantial acts necessary to be done in the prosecution; that, if the prosecution of the business of cotton factor required him to do several acts and perform several kinds of labor, and he was able to do and perform only one, he was as effectually disabled from performing his business as much as if he could do nothing required to be done. Therefore, if you find from the testimony that the business of cotton factor required as one of its duties the sampling of cotton, and that it was necessary, in order to perform that duty, to use both arms and hands, and that the right arm and hand of plaintiff have been totally paralyzed from the date of the accident to the 8th day of January, 1908, and that by reason thereof he has not been able to sample cotton, then such total paralysis of said arm and hand is a total disability, under the terms of the contract in the policy, and you will find for the plaintiff for the time and amount fixed by said policy."

And the court gave the following at the request of the defendant: "No. 5. You are instructed that, to entitle the plaintiff to recover damages for total disability under the terms of the policy in evidence, it is necessary for him to show, by a preponderance of the evidence, that he was continuously and wholly prevented by reason of the accidental injury from performing any and every kind of duty pertaining to his occupation; and if you believe from the evidence plaintiff was able, during any of the period from April 8, 1907, to July 8, 1908, to perform any of the duties pertaining to his occupation, then you should in your verdict allow him only for partial disability for such time, if any, you believe from the evidence he was able to perform any of such duties.

"You are instructed that it is not sufficient for the plaintiff to show a substantial disability to transact his business, but he must show by a preponderance of the evidence that he was unable to perform any and every kind of duty pertaining to his occupation."

And refused to give the following at the request of the defendant: "No. 2.   You are instructed that it is incumbent upon the plaintiff to observe reasonable care to avoid unnecessary disability or the unnecessary continuance of disability; and if you believe from the evidence that the plaintiff, Chew, did not observe reasonable care in following the advice of his physician, Dr. F. D. Smythe, and if you further believe from the evidence that, because of his failure to observe such reasonable care, he was disabled to a greater extent or for a greater length of time than he would have been by the exercise of such reasonable care, then you should find for the plaintiff only to the extent and for the length of time he would have been disabled if he had exercised such reasonable care."

Plaintiff recovered judgment, and the defendant appealed.

Plaintiff had no right to read the deposition of Dr. Smythe as evidence without the consent of the defendant, the same not having been taken under an agreement. *Sexton* v. *Brock,* 15 Ark 345; *Ong Chair Co.* v. *Cook,* 85 Ark. 390.

The court erred in giving the instruction at the instance of the plaintiff.   It is in violation of the terms and conditions of the policy sued on.   The parties had the right to make their own contract, and the courts are powerless to make another or a new contract for them.   As said in *Standard Life & Accident Insurance Co.* v. *Ward,* 65 Ark. 295, "The insurance company had the right to fix the terms and conditions upon which it would insure appellee, and the latter had the right to accept or reject the insurance in these terms and conditions; but, having accepted the same, it was a contract between them, and, being in violation of no principle of law, nor in contravention of the policy of the law, must be enforced according to its terms and meaning; and the courts have the right neither to make contracts for parties, nor to vary their contracts to meet and fulfill some notion of abstract justice, and still less of moral obligation."

The instruction assumes that plaintiff had the right to re-

cover the indemnity as a cotton factor, if at all, when there was evidence tending to prove that he was a "supervising farmer" at the time of the accident, and if he was such he was not entitled to recover as great an indemnity as he would have been entitled to had he been only a cotton factor; and also assumes that he is totally disabled by reason of his inability to "sample" cotton, when the evidence shows that there are many other duties he has to perform in pursuing his vocation of cotton factor. There the instruction is in conflict with that given upon the same subject at the request of the defendant.

The instruction asked by the defendant and refused by the court is not entirely correct. The failure of the plaintiff to observe reasonable care in following the advice of his physician could not affect the defendant unless it increased the indemnity, and defendant would have no right to complain, but this fact is not mentioned in the request. It has been held in cases of personal injury that no damages should be allowed the injured party for any impairment of health or physical condition occasioned by his neglect to observe the directions of his physician. *Keyes* v. *Cedar Falls* (Iowa), 78 N. W. Rep. 227, 229. Upon the same principle no indemnity should be allowed to an assured in actions like this on account of an extension of the injury where such extension is occasioned by his neglect to observe such directions.

Appellant lays stress upon the evidence tending to prove that appellee was a "supervising farmer" at the time the policy was issued and at the time the accident occurred; but this evidence was submitted to the jury upon proper instructions given at the request of appellant. As a new trial will be granted, comments are unnecessary.

Reverse and remand for a new trial.