Scott HIGGINBOTHAM *v.* ARKANSAS BLUE CROSS AND BLUE SHIELD, a Mutual Insurance Company

92-148                                        849 S.W.2d 464

Supreme Court of Arkansas
Opinion delivered March 1, 1993
[Rehearing denied April 5, 1993*]

*Holt, C.J., and Glaze and Corbin, JJ., would grant rehearing.

*Adams & Nichols*, by: *Donald J. Adams*, for appellant.

*Matthews, Campbell & Rhoads, P.A.*, by: *George R. Rhoads* and *David R. Matthews*, for appellee.

STEELE HAYS, Justice. This dispute between insured and insurer over proceeds arising from personal injuries to the insured is certified to us by the Court of Appeals as containing both an issue of significant public interest and a legal principle of major importance. Our jurisdiction attaches under Rule 29.4(b) of the Rules of the Supreme Court and Court of Appeals.

On February 29, 1990, Scott Higginbotham (appellant) was seriously injured in an automobile accident. Scott's father, Glenn Higginbotham, was insured by Arkansas Blue Cross and Blue Shield (appellee) pursuant to an insurance contract (No. U96626) issued through the Arkansas Public School Employees. Scott, as son and a full-time student, was an insured under the contract. Blue Cross paid medical bills totalling $11,482.08. The liability carrier for the other motorist, State Farm Mutual Insurance Company, paid Scott Higginbotham its policy limits, $25,000, in return for which Scott executed a settlement releasing State Farm and its insured from all further liability.

Subsequently, Blue Cross made demand on Scott for reimbursement of the benefits paid by it, relying on the following subrogation clause in the insurance policy:

> In the event any benefits or services of any kind are furnished to you or payment made or credit extended to or on behalf of any covered person for a physical condition or injury caused by a third party or for which a third party may be liable, the Plan shall be subrogated and shall succeed to such covered person's rights of recovery against any such third party to the full extent of the value of any

such benefits or services furnished or payments made or credits extended.

Higginbotham refused to honor the request, taking the position that Blue Cross was not entitled to subrogation until he had received sufficient sums of money to be "made whole." This litigation ensued and both parties filed motions for summary judgment. Higginbotham's motion included affidavits from trial lawyers assessing his injuries at over $50,000. Blue Cross stated in response that these affidavits created disputed fact questions, but argued the trial court could rule without using the affidavits, simply finding that the insurer should be granted immediate subrogation, irrespective of whether the insured had yet been made whole.

The trial court found that the $25,000 did not fully compensate Higginbotham for his injuries, but made no finding as to the total amount of the loss. The trial court held the right of subrogation provided in the insurance contract applies "regardless of whether the covered individual is fully compensated in his settlement with the tort-feasor's insurance company."

Higginbotham maintains that this question has not been previously addressed in this jurisdiction, but that other decisions are supportive of his position. Blue Cross takes issue with the assertion that no precedent exists in this jurisdiction, citing *Storey* v. *Arkansas Blue Cross and Blue Shield, Inc.*, 17 Ark. App. 112, 704 S.W.2d 176 (1986), as "remarkably similar." Both cases involve the child of a public school employee covered under an Arkansas Public School Employees policy. In both, a settlement was reached with the third party's liability carrier without the approval of Blue Cross releasing the carrier and the tortfeasor from further liability. After having paid medical and hospital benefits to Storey, Blue Cross learned that Storey had settled her tort claim against a third party for $39,000. Blue Cross sued for reimbursement and obtained a judgment against Storey for $3,234, from which Storey appealed. Interpreting the identical policy provision involved in the case at bar, the Court of Appeals affirmed:

> Appellant was entitled to the benefits paid by appellee pursuant to its contract with appellant's mother, and upon payment of medical benefits on appellant's behalf, appel-

lee was entitled under the contract provisions to recoup those payments. While appellant had the option to decline any benefits as a member under the contract, she simply chose not to do so.

The Court of Appeals also observed:

> [W]e tend to agree with the appellant that the settlement amount had no relevance concerning appellee's right to reimbursement under the insurance contract. . . .

We recognize that there is authoritative support for Higginbotham's point of view. *See* e.g., *Powell* v. *Blue Cross and Blue Shield*, 581 So.2d 772 (Ala. 1990), a plurality opinion representing the view that subrogation is essentially an equitable remedy, and even where there are contract provisions between the insured and the insurer for subrogation rights, equitable principles prevail and require that the insured be made whole for the total loss before the insurer can recover from any funds received by the insured. In accord is *Rimes* v. *State Farm Mutual Automobile Ins. Co.*, 106 Wis.2d 263, 316 N.W.2d 348 (1982).

On the other hand is *Culver* v. *Insurance Co. of North America*, 115 N.J. 451, 559 A.2d 400 (1989). *Culver* holds that subrogation principles do not override the right to contract. (*See also* the dissenting opinion in *Powell* v. *Blue Cross and Blue Shield* by Houston and Maddox, JJ., and the dissenting opinion in *Rimes* v. *State Farm* by Steinmentz, J.).

Although we attribute considerable merit to the opposing approach, we believe on balance the policy language must govern. The clause is clear; the words are unambiguous:

> In the event *any benefits* or services *of any kind* are furnished to you or payment made or credit extended to or on behalf of any covered person for a physical condition or *injury caused by a third party or* for which a third party may be liable, the Plan *shall be subrogated* and shall succeed to such covered person's rights of recovery against any such third party *to the full extent of the value of any such benefits* or services furnished or payments made or credits extended. [Our emphasis.]

We are not overlooking our own case, *Shelter Mutual*

*Insurance Company* v. *Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992), decided after these briefs were filed but discussed in oral argument. The decision contains this comment:

> Although we have no criticism of the cases cited by Bough, the rule limiting the insurer's rights to subrogation in those cases is not applicable to the facts here. The equitable nature of subrogation is granted an insurer to prevent the insured from receiving a double recovery. Thus, while the general rule is that an insurer is not entitled to subrogation unless the insured has been made whole for his loss, the insurer should not be precluded from employing its right of subrogation when the insured has been fully compensated and is in a position where the insured will recover twice for some of his or her damages. That is the situation here.

But the fact remains that we have not previously addressed the issue here presented, nor were we doing so in *Bough*. The primary holding of that case concerned whether Shelter had properly made underinsured motorist benefits available to its insureds, Nancy and Robert King, whose vehicle Bough was driving when the loss occurred. A secondary issue was whether Shelter was prejudiced by Bough's full release of the third party tort-feasor and his carrier without notice to Shelter. Thus, the excerpt from Bough was dictum.

It may be those equitable principles on which Higginbotham relies are appropriate to the doctrine of subrogation by operation of law, a right broadly recognized in the law irrespective of whether there is a provision in the policy itself, but not where, as here, the right is one of conventional subrogation, that is, subrogation by express agreement between the insured and the insurer. *See* 44 Am. Jur. 2d *Insurance* at 783 (1982).

Without discounting the equitable properties of subrogation, we can conceive of no sound reason why broad principles of equity should be imbued with dominance over clear and specific provisions of a contract agreed to by the parties, at least where public policy considerations are wanting. Language from the decision of this court in *Standard Life and Accident Insurance Co.* v. *Ward*, 65 Ark. 295, 45 S.W. 1065 (1898) repeated in *Maryland Casualty Co.* v. *Chew*, 92 Ark. 276, 122 S.W. 642

(1909), is pertinent:

> The insurance company had the right to fix the terms and conditions upon which it would insure appellee, and the latter had the right to accept or reject the insurance in these terms and conditions; but, having accepted the same, it was a contract between them, and, being in violation of no principle of law, nor in contravention of the policy of the law, must be enforced according to its terms and meaning; and the courts have the right neither to make contracts for parties, nor to vary their contracts to meet and fulfill some notion of abstract justice, and still less of moral obligation.

That was written a near century ago but is, nonetheless, the law.

Affirmed.

HOLT, C.J., and GLAZE and CORBIN, JJ., dissent.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. I agree that Blue Cross should be subrogated under its insurance policy to benefits paid for the same risk that it covered which is medical care due to personal injury. Based on the record before us, it is impossible to tell what State Farm's liability benefit of $25,000 involved. Presumably it was liability coverage for bodily injury only. Blue Cross should only recover by subrogation to the extent that there has been double recovery by the insured for the same damages covered by Blue Cross. Had the appellant shown that part of the State Farm benefits were for damages other than for medical treatment, I would disallow subrogation for the non-medical portion of the benefits paid for public policy reasons. However, that was not done, perhaps because the parties understood that the liability coverage only went to bodily injury. For that reason I concur with the opinion.

TOM GLAZE, Justice, dissenting. Today's decision clearly conflicts with our recent holding in *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992). There, we adopted the general rule that while an insurer is not entitled to subrogation unless the insured has been made whole for his loss, the insurer should not be precluded from employing its right of subrogation when the insured has been fully compensated and is in a position

where the insured will recover twice for some of his or her damages. In other terms, the rule has been stated that subrogation is not available to the insurer where the loss exceeds the amount recovered from the insurer and the wrongdoer. To this effect, *see* 6A Appelman, Insurance Law & Practice § 4095 at p. 275 (1972 and Supp. 1992). Couch relates the principle that equity requires that the insured be made whole before the insurer's right to subrogation arises. 16, Couch on Insurance, 2d Rev. ed. § 61, 20 (1983).

In the present case, the proof showed that the insured's total damages amounts to at least $60,000, but he has received only $11,482.08 from his insurer, Arkansas Blue Cross & Blue Shield, and $25,000 from the wrongdoer's insurer. Thus, the insured, Mr. Higginbotham, has received a total of $36,482.08, and no proof reflects this amount came close to paying him for his entire loss.

The majority court attempts to distinguish the rule in *Bough* by stating that the situation here involved "conventional subrogation" and that the insurer's and insured's rights are determined purely on contractual terms. However, the rule appears settled that subrogation is recognized or denied upon equitable principles without differentiation between "legal subrogation" which arises by application of principles of equity and "conventional subrogation" arising from contract or the acts of the parties. *Garrity* v. *Rural Mut. Ins. Co.*, 77 Wis.2d 537, 253 N.W.2d 512 (1977). As the *Garrity* court further stated, the conventionally subrogated or contractual insurer has no share in the recovery from the tortfeasor if the total amount recovered by the insured from the insurer does not cover his loss. *Maryland Casualty of Baltimore, Md.* v. *Cincinnati, C., C. & St. L. Ry. Co.*, 74 Ind.App. 272, 124 N.E. 774 (1919); *Providence Washington Insurance Co.* v. *Hogges*, 67 N.J.Super. 475, 171 A.2d 120 (1961); *Hardware Dealers Mutual Fire Ins. Co.* v. *Ross*, 129 Ill.App.2d 217, 262 N.E.2d 618 (1970); *Lyon* v. *Hartford Accident and Indemnity Co.*, 25 Utah 2d 311, 480 P.2d 739 (1971).

In my view, the rule we adopted in *Bough* is applicable to the situation before us now, and accordingly we should reverse.

HOLT, C.J. and CORBIN, J., join this dissent.