## S96G1067. DUNCAN v. INTEGON GENERAL INSURANCE CORPORATION.

(482 SE2d 325)

CARLEY, Justice.

Peggy Duncan brought suit for damages arising out of an automobile collision and, in addition to the tortfeasor, she also served Integon General Insurance Corporation (Integon) in its capacity as her uninsured motorist carrier. Integon denied coverage and filed a counterclaim against Ms. Duncan seeking reimbursement of the $5,000 it previously paid her under the medical payments provision of the policy. In the main action, Ms. Duncan settled her $48,148 claim against the tortfeasor for the $15,000 limit of his liability insurance policy. On cross-motions for summary judgment as to the counterclaim, the trial court denied Integon's motion and dismissed its counterclaim, but the Court of Appeals reversed. *Integon General Ins. Co. v. Thompson*, 220 Ga. App. 631 (469 SE2d 346) (1996). We granted certiorari to consider whether the complete compensation rule, which requires that an insured be completely compensated for his losses before his insurer can exercise a right of subrogation or reimbursement, is applicable to an insurance policy provision which requires the insured to reimburse the insurer for amounts paid under medical payments coverage. We hold that, consistent with the public policy of Georgia, the complete compensation rule does limit the applicability of such a reimbursement provision, at least where the insurance contract does not contain an express provision to the contrary. As there is no express provision to the contrary in Ms. Duncan's policy, we reverse the judgment of the Court of Appeals.

In relevant part, Ms. Duncan's policy provides as follows:

If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall: 1. Hold in trust for us the proceeds of the recovery; and 2. reimburse us to the extent of our payment.

It is undisputed that Ms. Duncan's policy did not expressly state whether her complete compensation would *or* would not constitute a limitation on Integon's invocation of this reimbursement provision. Accordingly, the issue for resolution is whether Ms. Duncan is entitled to complete compensation because the policy did not expressly reject the applicability of that condition *or* whether Integon is entitled to unconditional priority because the policy did not expressly authorize Ms. Duncan's complete compensation. In making this determination, the absence of an express provision must be strictly construed against Integon and in accordance with the reasonable expectations of Ms. Duncan. *Roland v. Ga. Farm Bureau Mut. Ins.*

*Co.*, 265 Ga. 776, 778 (1) (462 SE2d 623) (1995).

The weight of authority is that, in the absence of an express policy provision to the contrary, "a medical payments insurer may exercise its right of subrogation only after the subrogor has been fully compensated for its loss." 8A Appleman, Insurance Law and Practice, p. 25, § 4903.65 (Supp. 1996-1997). Thus, in the absence of an express provision in the policy specifying that the complete compensation rule does *not* qualify the insurer's invocation of a reimbursement provision as to medical payments, that rule *implicitly* applies and mandates the insured's complete compensation.

> [N]early every appellate court that has considered the question has recognized that unless an insurance policy contains a provision to the contrary, an insurer's right to recover under a subrogation clause of an insurance policy requires that the insured must have been fully compensated for the loss covered by the policy.

*Shelter Ins. Cos. v. Frohlich*, 498 NW2d 74, 80 (Neb. 1993) (involving a subrogation clause in a medical payments provision). In its extensive review of foreign authority, *Shelter*, supra at 81, sets forth the rationale for this holding: Where the insurer or the insured must go unpaid to some extent, the loss should be borne by the insurer, since the insurer has already been paid a premium for assuming this risk and would have been obligated to pay medical expenses regardless of its insured's negligence and regardless of whether a culpable third party could have been found. Under the contrary construction, the insurer would receive an unearned premium for assuming no risk whatsoever and "all the insured's settlement could be applied to a medical payment subrogation claim with nothing left to compensate the insured for excess medical bills or personal injuries." *Shelter Ins. Cos. v. Frohlich*, supra at 82.

For the same reasons, we conclude that Georgia public policy strongly supports the rule that an insurer may not obtain reimbursement unless and until its insured has been completely compensated for his losses. Indeed, Georgia public policy encourages insurance coverage which assures no less than full compensation to the insured, while at the same time preventing the insured from recovering more than is necessary to make him whole. *Barker v. Coastal States Life Ins. Co.*, 138 Ga. App. 164, 167-168 (225 SE2d 924) (1976). Furthermore, Georgia law has long recognized that subrogation, a doctrine originating in equity, is founded upon the "dictates of refined justice. Its basis is the doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice." *Cornelia Bank v. First Nat.*

*Bank of Quitman*, 170 Ga. 747, 750 (154 SE 234) (1930). These considerations of public policy and equitable principles of subrogation are so strong that some jurisdictions declare that any insurance policy provision which modifies the complete compensation rule is unenforceable and void. However, we need not decide that issue in this case because Ms. Duncan's policy contains no clause which contravenes the public policy or equitable principles of subrogation which undergird the complete compensation rule. *Wine v. Globe American Cas. Co.*, 917 SW2d 558, 564 (Ky. 1996).

What we do decide today is that the complete compensation rule implicitly applies because the reimbursement provision in Ms. Duncan's policy contains no "provision to the contrary." *Shelter Ins. Cos. v. Frohlich*, supra at 80. At least two courts have applied the complete compensation rule to *identical* reimbursement provisions. *Oss v. United Services Auto. Assn.*, 807 F2d 457 (5th Cir. 1987); *Wine v. Globe American Cas. Co.*, supra. Even the most careful and intelligent reader would not regard the reimbursement provision " 'as qualifying the basic promise to pay, and to give it that effect is to enforce provisions drafted by the insurer that are inherently deceptive.' " *Oss v. United Services Auto. Assn.*, supra at 460. The policy language at issue does "not express an intent to invest the [insurance] carrier with a *priority* over its less than fully compensated insured." (Emphasis in original.) *Wine v. Globe American Cas. Co.*, supra at 564.

In *Cherokee Ins. Co. v. Lewis*, 187 Ga. App. 628 (371 SE2d 103) (1988), the Court of Appeals considered a statute which is silent on the question of whether the insurer or the insured has priority of payment from the tortfeasor. However, the relevant statute in *Cherokee Ins. Co.* subrogates the insurer to the rights of the insured "to the extent that payment was made" and, thus, is very similar to the contractual provision at issue here. Because there was nothing "to the contrary" in the statute, the Court of Appeals correctly applied the complete compensation rule in *Cherokee Ins. Co. v. Lewis*, supra. See also *Mullenberg v. K. J. Saxon Constr. Co.*, 192 Ga. App. 281, 282 (1) (384 SE2d 418) (1989). Conversely, the Court of Appeals erred by failing to apply the complete compensation rule in this case, there being nothing "to the contrary" in the insurance policy issued by Integon to Ms. Duncan. Thus, the Court of Appeals erroneously reversed the trial court's order denying Integon's motion for summary judgment and dismissing its counterclaim.

*Judgment reversed. All the Justices concur, except Fletcher, P. J., Sears and Hines, JJ., who dissent.*

SEARS, Justice, dissenting.

In concluding that the complete compensation rule applies in

this case, the majority fails to recognize the significance of the right of freedom of contract in this State and errs in concluding that the reimbursement clause at issue does not grant a priority of payment to Integon. Because I conclude that the parties' contract does give Integon priority, and because I do not find that that contractual provision is contrary to the public policy of this State, I dissent.

1. The reimbursement clause of the parties' contract provides as follows:

> B. If we [the insurance company] make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
> 1. Hold in trust for us the proceeds of the recovery; and
> 2. reimburse us to the extent of our payment.

The majority concludes that "[t]he policy language at issue does 'not express an intent to invest the [insurance] carrier with a *priority* over its less than fully compensated insured.' "[1] The language of the reimbursement clause, however, can have no other effect. Its plain language requires Duncan to hold *any recovery* from the tortfeasor in trust for Integon and *to pay any recovery to Integon*, to the extent of its payment to Duncan.[2] By this language, the clause establishes a priority of payment in favor of Integon relating to any proceeds recovered from a tortfeasor. Although cases from other jurisdictions are divided on whether subrogation and reimbursement clauses unambiguously grant an insurer a priority to any recovery from a tortfeasor,[3] the present clause is clearly unambiguous. The majority errs

---

[1] Majority opinion at 648.

[2] See *United States Fire Ins. Co. v. Capital Ford Truck Sales,* 257 Ga. 77, 79 (1) (355 SE2d 428) (1987) (where the meaning of an insurance contract is "plain and obvious, it should be treated as literally provided therein").

[3] Compare *Fields v. Farmers Ins. Co.,* 18 F3d 831, 835 (10th Cir. 1994) (holding that language in subrogation clause was unambiguous in granting preference to insurer); *Higginbotham v. Arkansas Blue Cross & Blue Shield,* 849 SW2d 464, 466 (Ark. 1993) (same); *Unified School District No. 259 v. Sloan,* 871 P2d 861, 866 (Kan. App. 1994) (holding that reimbursement clause in policy was unambiguous), with *Garrity v. Rural Mut. Ins. Co.,* 253 NW2d 512, 513, 516 (Wis. 1977). In the latter case, the subrogation clause merely granted the insurer the right to be subrogated to the "right of recovery against [a tortfeasor]," distinguishing that case from the present one. Further, although the majority relies on *Oss v. United Services Auto. Assn.,* 807 F2d 457 (5th Cir. 1987), and *Wine v. Globe American Cas. Co.,* 917 SW2d 558, 564 (Ky. 1996), and although the insurance policies in those cases contained reimbursement clauses like the one in this case, neither opinion specifically addressed the meaning of the reimbursement clause, and neither court based its holding on the language of the reimbursement clause. In *Wine,* the court focused only on the language in the parties' policy giving the insurer the right to be "subrogated" "to [the insured's] right to recover damages from another," holding that the insurers did not have a priority to payment because the "policy language cited above only provides the insurance carrier the right of subrogation, i.e., at some future time to be substituted in the place of its insured." *Wine,* 917 SW2d at 564.

in reaching a contrary conclusion.

2. The question then becomes whether this unambiguous clause violates any state statutes or public policy. Georgia has historically afforded great protection to the freedom to contract with another person.[4] Georgia courts are thus bound to enforce contracts as made so long as they are not contrary to law or public policy.[5] In this case, because there is no relevant statute, the focus must be on whether the reimbursement clause is contrary to public policy.

The following discussion from *Dept. of Transp. v. Brooks*[6] regarding the ability of a court to void a contract on the ground that it violates public policy is relevant to the present case.

> OCGA Title 13, Ch. 8, contains the statutory provisions on the subject of contracts which are void as violative of public policy. OCGA § 13-8-1 provides, "A contract to do an immoral or illegal thing is void. If the contract is severable, however, the part of the contract which is legal will not be invalidated by the part of the contract which is illegal." OCGA § 13-8-2 (a) provides, "A contract which is against the policy of the law cannot be enforced. Contracts deemed contrary to public policy include but are not limited to: (1) Contracts tending to corrupt legislation or the judiciary; (2) Contracts in general restraint of trade; (3) Contracts to evade or oppose the revenue laws of another country; (4) Wagering contracts; (5) Contracts of maintenance or champerty."
>
> "Public policy" is an amorphous concept; thus, "[p]roblems have arisen here, as elsewhere, in ascertaining the authoritative sources of public policy and in channeling the discretion of the trial judge." 4 Ga. L. Rev. 469, 480, The Unconscionability Offense (1970) (footnote omitted.) [sic]. Accordingly, it has been held that, "the delicate and undefined power of courts to declare a contract void as contravening public policy should be exercised with great caution, and only in cases free from substantial doubt . . ." *Foster v. Allen*, 201 Ga. 348, 349 (40 SE2d 57) (1946); *McClelland v.*

---

In *Oss*, the holding of the court did not stem from the reimbursement clause, but from the simple fact that "[i]n Texas . . . the same principles govern both equitable and contractual subrogation. By construing subrogation clauses to confirm, but not expand, the equitable subrogation rights of insurers, Texas properly recognizes the expectations of insureds." *Oss*, 807 F2d at 460.

[4] *Porubiansky v. Emory Univ.*, 156 Ga. App. 602, 604 (275 SE2d 163) (1980), aff'd, 248 Ga. 391 (282 SE2d 903) (1981).

[5] *Talley v. Mathis*, 265 Ga. 179 (453 SE2d 704) (1995); *Porubiansky*, 156 Ga. App. at 603-604.

[6] 254 Ga. 303 (328 SE2d 705) (1985).

*Alexander*, 117 Ga. App. 663 (2) (161 SE2d 397) (1968).

Basic criteria have been set down for the determination of whether a contract is void as against public policy. "A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law. *Camp v. Aetna Ins. Co.*, 170 Ga. 46, 50 (152 SE 41) (1930); *Brown v. Five Points Parking Ctr.*, [121 Ga. App. 819, 821 (175 SE2d 901) (1970)]." *Porubiansky v. Emory University*, 156 Ga. App. [at] 603, aff'd sub nom. *Emory University v. Porubiansky*, 248 Ga. 391. Accord *Williams v. Cox Enterprises, Inc.*, 159 Ga. App. 333 (1) (283 SE2d 367) (1981). But see *Strickland v. Gulf Life Ins. Co.*, 240 Ga. 723 (242 SE2d 148) (1978).[7]

It has also been held that the provisions of § 13-8-2 setting forth instances when a contract is void as against public policy " 'should not be enlarged without convincing and conclusive reasons.' "[8]

I can discern no public policy that would void the reimbursement clause in Duncan's contract with Integon. Duncan contends that, although the reimbursement clause in this case arises by contract, it is appropriate to look to and apply the principles of equity underlying the doctrine of equitable subrogation, and that those equitable principles require that the complete compensation doctrine be engrafted onto the reimbursement clause in her contract. I conclude, however, that equitable subrogation principles cannot be engrafted onto the reimbursement clause.

First, even apart from the public policy hurdle that Duncan must overcome, it is problematic whether equitable principles of subrogation should override the clear provisions of an insurance contract. "Without discounting the equitable properties of subrogation, we can conceive of no sound reason why broad principles of equity should be imbued with dominance over clear and specific provisions of a contract agreed to by the parties, at least where public policy considerations are wanting."[9]

Further, and more significantly for Duncan, Duncan must in fact be able to show that the equitable principles on which she relies are part of the public policy of this state before they can override the

---

[7] *Brooks*, 254 Ga. at 311-312.

[8] *Porubiansky*, 156 Ga. App. at 604.

[9] *Higginbotham*, 849 SW2d at 466. Accord *Fields*, 18 F3d at 835; *Sloan*, 871 P2d at 865-866.

reimbursement clause in her contract. Although I understand the nature of equitable subrogation,[10] as well as the considerations supporting the complete compensation rule,[11] under the standards for determining public policy discussed above, I cannot conclude that these equitable considerations constitute a public policy of this state so that an insurer and an insured can never enter into a clear agreement allocating their risks differently from those considerations.[12] In this regard, although the legislature has on occasion required that an insured be completely compensated before an insurer is entitled to subrogation or reimbursement, the legislature also has on occasion not required complete compensation.[13] Further, the legislature has no statute addressing the issue raised by this case.

Moreover, although the right of subrogation granted to insurers by our uninsured motorist statute[14] has been construed to be dependent upon the complete compensation of the insured,[15] the statute is silent on the question of whether the insurer or the insured should have a priority of payment from the tortfeasor, merely providing that the insurer "shall be subrogated to the rights of the insured."[16] *Lewis* therefore involved only the construction of an ambiguous statute and not a question of whether public policy may supersede the clear terms of a contract.

Because the power to declare a contract void as against public policy must be " 'exercised with great caution,' "[17] and because, for the reasons given above, I cannot conclude that " 'clear and conclusive reasons' "[18] exist for enlarging the provisions of § 13-8-2, I would hold, as did the court in *Fields*,[19] that public policy does not permit us to ignore the unambiguous terms of Duncan's insurance policy. I

---

[10] See *Carter v. Banks*, 254 Ga. 550, 552 (330 SE2d 866) (1985) (subrogation arises from "an equitable principle founded on the proposition that an insured ought not to collect damages for his loss from both his insurer and the tortfeasor, a double recovery").

[11] It has been stated that the rule is most consistent with the equitable principles underlying subrogation, *Rimes v. State Farm Mut. Auto. Ins. Co.*, 316 NW2d 348, 353 (Wis. 1982); *Powell v. Blue Cross & Blue Shield*, 581 S2d 772, 777 (Ala. 1990), and that "where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume," *Garrity*, 253 NW2d at 514.

[12] See *Fields*, 18 F3d at 835.

[13] Compare OCGA § 34-9-11.1 (b) (requiring complete compensation of injured employee before employer or employer's insurer can exercise the right of subrogation granted by OCGA § 34-9-11 (b)), with former OCGA § 33-34-3 (d) (1), as amended by Ga. L. 1984, p. 516 (requiring complete compensation of the insured before the insurer could exercise its limited right of subrogation only if the tortfeasor was uninsured), see *Southern Gen. Ins. Co. v. Cotton States Mut. Ins. Co.*, 193 Ga. App. 240 (387 SE2d 435) (1989).

[14] See OCGA § 33-7-11 (f).

[15] See *Cherokee Ins. Co. v. Lewis*, 187 Ga. App. 628 (1) (371 SE2d 103) (1988).

[16] Id.

[17] *Brooks*, 254 Ga. at 311-312.

[18] *Porubiansky*, 156 Ga. App. at 604.

[19] 18 F3d at 836.

therefore dissent.

I am authorized to state that Presiding Justice Fletcher and Justice Hines join in this dissent.

DECIDED MARCH 17, 1997.

—

*William S. Sarandis, Philip L. Westee, Butler, Wooten, Overby, Cheeley & Pearson, Albert M. Pearson III,* for appellant.

*Smith, Howard & Ajax, Michael D. Amand, Christopher M. Ziegler,* for appellee.

*Doffermyre, Shields, Canfield & Knowles, Kenneth S. Canfield,* amicus curiae.

S97Y0574, S97Y0615, S97Y0616, S97Y0617, S97Y0618, S97Y0619, S97Y0620. IN THE MATTER OF LEROY W. ROBINSON, JR.
(482 SE2d 323)