# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-326

| | |
|---|---|
| TYLER CARTER JOHNSON<br>APPELLANT | **Opinion Delivered: January 18, 2017**<br><br>APPEAL FROM THE CRAIGHEAD<br>COUNTY CIRCUIT COURT,<br>WESTERN DISTRICT<br>[NO. 16CV-15-584] |
| V. | |
| STATE FARM MUTUAL<br>AUTOMOBILE INSURANCE<br>COMPANY<br>APPELLEE | HONORABLE JOHN N. FOGLEMAN,<br>JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals from the circuit court's order granting appellee's motion to dismiss. His sole argument on appeal is that the circuit court erred in granting appellee's motion to dismiss after finding a policy provision valid when that provision's requirement is not part of the statutorily-mandated coverage. We affirm.

I.    *Facts*

On May 27, 2014, appellee issued a policy of automobile insurance to appellant's grandmother, Sue Johnson. Appellant lived with his grandmother and therefore was covered by her policy with appellee.[1] On November 27, 2014, appellant was a passenger in an uninsured vehicle that was involved in an accident. Appellant did not immediately seek treatment, though he did eventually seek treatment.

---

[1] Appellee stipulated below that appellant was an "insured."

SLIP OPINION

On March 20, 2015, appellant made a claim for medical benefits under the medical-payments coverage of the policy. Appellee responded on March 26, 2015, advising appellant that it could not determine whether the treatment initiated with Curtis Chiropractic "almost 4 months [after the accident] is reasonable, necessary and solely related to the accident." Accordingly, it advised appellant that the "terms of the policy require participation in an exam by physicians chosen and paid by us as often as we reasonably may require" and that "[r]efusing our request impairs our ability to determine what benefits are payable[,]" so it could not consider benefits under the medical-payments coverage without appellant's recorded statement about the accident and an independent medical examination (IME).[2] In a letter dated March 30, 2015, appellant advised appellee that he would be submitting medical bills to be reimbursed.

In a letter dated April 8, 2015, appellee stated of appellant's actions that:

It is questionable whether there has been compliance with the provision of the policy requiring the assistance and cooperation of the insured, by reason of allegations or evidence of

- insured's refusal to give pertinent information to the company
- insured's refusal to assist in investigation
- insured's refusal to cooperate in giving and securing evidence[.]

Appellant was notified by letter dated May 5, 2015, that an IME had been scheduled for him on May 19, 2015. Appellant objected to the IME by letter dated May 11, 2015, asserting that such an examination "is not required under Arkansas' med pay statute." He also enclosed a medical authorization to obtain records from his service providers.

---

[2] Appellant gave a recorded statement on April 16, 2015.

Appellee responded in a letter dated May 12, 2015, and advised that the "[s]tatute is silent on the issue of [IMEs], thus not allowing or disallowing them." It further stated that appellant's refusal to attend the exam or to delay its scheduling would impair appellee's ability to determine what benefits were payable and that appellant's failure to cooperate may cause appellee to deny his medical-payments claim. Appellant did not attend the scheduled IME; therefore, appellee notified him by letter on May 20, 2015, that it was unable to consider any outstanding or future benefits from appellant related to the November 27, 2014 accident.

On August 18, 2015, appellant forwarded medical bills totaling $1,542.00 to appellee for payment. The medical bills were for a visit to NEA Baptist Clinic on December 14, 2014;[3] and visits to Curtis Chiropractic & Wellness Center between March 23, 2015, and May 12, 2015.[4]

Appellant filed a complaint against appellee on September 15, 2015, for breach of contract.[5] The policy was not attached to the complaint. Appellee filed a combined motion to dismiss and answer to appellant's complaint on October 15, 2015. Therein, appellee sought dismissal of appellant's complaint as "premature" because he had failed to perform conditions precedent to filing the lawsuit; specifically, appellant had failed to submit to an IME. Appellee also pled affirmatively that appellant had failed to comply

---

[3] This visit occurred one month and thirteen days after the accident.

[4] These visits began four months and nine days after the accident.

[5] Appellant never expressly stated his cause of action, but he alleged that appellee failed to pay medical payments pursuant to the policy.

with the provisions of the policy to allow appellee to consider reimbursement of claimed medical expenses.

Appellant responded to appellee's motion to dismiss on October 29, 2015, asserting that

> Arkansas Code Annotated § 23-89-205 explains that an insurer may exclude the medical payment benefits to an insured when the insured's conduct contributed to the injury he or she sustained by causing injury to himself intentionally or causing injury while in the commission of a felony or while seeking to elude lawful apprehension or arrest by a law enforcement official. *The legislature set forth only these specific exclusions.*[6]

Appellant argued that appellee's policy "provides an additional requirement that the insured must be examined as reasonably often as State Farm may require by physicians chosen and paid by State Farm. This policy was not entered into by plaintiff, but rather by Sue Johnson, plaintiff's grandmother. Thus, *plaintiff did not contract this additional term of the policy with defendant.*"[7] He therefore argued that appellee's policy provision created a requirement not found in the statute, that was contrary to legislative intent, and which did not apply to him.

Appellee replied to appellant's response on November 5, 2015, and noted therein that the policy agreement provided that an insured had a duty to cooperate with appellee and that a person making a claim under medical-payments coverage must be examined as reasonably often as appellee may require by physicians chosen and paid by appellee; that appellee requested an examination of appellant on May 19, 2015, which appellant failed to

---

[6] (Emphasis added.)

[7] (Emphasis added.)

appear for; and that it subsequently notified appellant that it was unable to consider payment of any outstanding or future claims based on appellant's refusal to submit to an IME. Appellee asserted that though appellant was contending that he did not enter into the contract and did not bargain for the IME provision, appellant had the same obligations to cooperate with the terms of the policy as if he were a named insured.

On December 15, 2015, appellee filed a motion for summary judgment in which it stated that it was "convert[ing] its Motion to Dismiss into a Motion for Summary Judgment."[8] In its separate brief in support, filed contemporaneously, appellee restated its arguments from its motion to dismiss, namely that appellant's complaint should be dismissed as premature where appellant had failed to cooperate with appellee's investigation. Appellee attached a copy of the policy to its brief in support of its motion for summary judgment. This was the only copy before the circuit court. It further asserted that appellant should not be allowed to seek benefits under its policy of insurance while at the same time arguing that he should not be bound by the provisions of the policy.

Appellant responded on December 23, 2015, by restating his previous argument that the IME requirement was an additional requirement imposed by appellee in its policy, which was contrary to legislative intent, and that his documentation of his medical bills, which he submitted to appellee, was sufficient and "reasonable proof of the amount of medical expenses[.]" He also reasserted that he did not enter into the contract and did not

_____

[8] Appellee's motion to dismiss and reply to appellant's response to its motion to dismiss were incorporated therein by reference as if fully set forth word for word.

contract for the additional requirement of the policy, with the implication appearing to be that the provision should not apply to him.[9]

A hearing was held on the matter on January 16, 2016, at the conclusion of which, the circuit court granted appellee's motion to dismiss. On January 19, 2016, the circuit court entered an order dismissing the matter without prejudice "as premature due to [appellant's] failure to cooperate with [appellee's] investigation of [appellant's] claims pursuant to the terms of the policy." This timely appeal followed.

## II. *Standard of Review*

Appellee argues on appeal that the circuit court erroneously granted its motion to dismiss, instead of its motion for summary judgment, and that the correct standard of review for this court is the standard of review for the grant of a motion for summary judgment. This court notes that appellee said below that both motions were "really the same thing" and that the "only purpose" it had in filing the motion for summary judgment was to attach the insurance policy. It is well settled that when a circuit court considers matters outside the pleadings, the appellate court will treat a motion to dismiss as one for summary judgment.[10] Because the actual policy was not attached to appellee's motion to dismiss and was not attached to any other document prior to and until appellee's motion for summary judgment, it is clear to this court that the circuit court

---

[9] Appellant never expressly stated in any of his pleadings that the provisions of the policy do not or should not apply to him, only that he was not a party to the contract and did not contract for the additional term.

[10] *Rowe v. Hobbs*, 2012 Ark. 244, at 5, 410 S.W.3d 40, 43 (citing *Koch v. Adams*, 2010 Ark. 131, 361 S.W.3d 817).

considered matters outside the pleadings in making its ruling. We therefore treat the court's order as granting a motion for summary judgment.

On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered.[11] The burden of sustaining a motion for summary judgment is always the responsibility of the moving party.[12] Once the moving party has established prima facie entitlement to summary judgment by affidavits, depositions, or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.[13] We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.[14]

### III.    *Statute*

Arkansas Code Annotated section 23-89-202 states that "[e]very automobile liability insurance policy covering any private passenger motor vehicle issued or delivered in this state shall provide minimum medical and hospital benefits . . . under policy provisions . . . to the named insured and members of his or her family residing in the same

---

[11] *Madden v. Mercedes-Benz USA, Inc.*, 2016 Ark. App. 45, at 4, 481 S.W.3d 455, 458.

[12] *Id.* (citing *New Maumelle Harbor v. Rochelle*, 338 Ark. 43, 991 S.W.2d 552 (1999)).

[13] *Id.*

[14] *Cent. Oklahoma Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, at 8, 400 S.W.3d 701, 707 (citing *Harrisburg Sch. Dist. No. 6 v. Neal*, 2011 Ark. 233, 381 S.W.3d 811).

household injured in a motor vehicle accident."[15] Those benefits are to include "[a]ll reasonable and necessary expenses for medical, hospital, nursing . . . incurred within twenty-four (24) months after the automobile accident, up to an aggregate of five thousand dollars ($5,000) per person[.]"[16] Arkansas Code Annotated section 23-29-208 states that "[b]enefits for any period are overdue if not paid within thirty (30) days after the insurer received reasonable proof of the amount of all benefits accruing during that period."[17] Appellee's policy with appellant's grandmother provides the above-referenced provisions, which are required to be offered by statute.[18]

Appellant argues that appellee's medical-payment-coverage provisions constitute an additional exclusion to the policy beyond that intended by the legislature. Arkansas Code Annotated section 23-89-205 states that "[a]n insurer may exclude benefits to any insured, or to his or her personal representative, under a policy required by § 23-89-202, when the insured's conduct contributed to the injury he or she sustained in any of the following ways: (1) Causing injury to himself or herself intentionally; or (2) Causing injury while in the commission of a felony or while seeking to elude lawful apprehension or arrest by a law enforcement official."[19] Referring to a predecessor section of an Arkansas statute that

---

[15] Ark. Code Ann. § 23-89-202 (Repl. 2014).

[16] Ark. Code Ann. § 23-89-202(1).

[17] Ark. Code Ann. § 23-89-208(b) (Repl. 2014) (emphasis added).

[18] Arkansas Code Annotated section 23-89-203(a) permits an insured to reject one or more of the coverages listed in Arkansas Code Annotated section 23-89-202, including medical and hospital benefits.

[19] Ark. Code Ann. § 23-89-205(1) & (2) (Repl. 2014).

is virtually identical to what is now Arkansas Code Annotated section 23-89-202, our supreme court has stated "[w]e do not read into this section any legislative intention to prohibit other exclusions from coverage."[20]

Looking to the language of appellee's policy with appellant's grandmother, the following appears under the section headed "Insured's Duties":

A person making a claim under:

a.  Medical Payments Coverage . . . must:

    (2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. . . .

    (3) provide written authorization for *us* to obtain:

        (a) medical bills;

        (b) medical records;

        (c) age, salary, and employment information; and

        (d) any other information we deem necessary to substantiate the claim.[21]

It is settled Arkansas law that an insurer may contract with its insured upon whatever terms the parties may agree, so long as those terms are not contrary to statute or public policy.[22] Our law regarding the construction of insurance contracts is well settled.[23]

---

[20] *Aetna Ins. Co. v. Smith*, 263 Ark. 849, 853, 568 S.W.2d 11, 13 (1978).

[21] (Emphasis in original.)

[22] *Shelter Mut. Ins. Co. v. Goodner*, 2015 Ark. 460, at 5, 477 S.W.3d 512, 515 (citing *Pardon v. S. Farm Bureau Cas. Ins. Co.*, 315 Ark. 537, 868 S.W.2d 468 (1994) (citing *Aetna Ins. Co. v. Smith*, 263 Ark. 849, 568 S.W.2d 11 (1978))).

The language in an insurance policy is to be construed in its plain, ordinary, and popular sense.[24] Different clauses of an insurance contract must be read together and the contract construed so that all of its parts harmonize.[25]

Insurance terms must be expressed in clear and unambiguous language.[26] If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction.[27] On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer.[28] Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation.[29] Whether the language of the policy is ambiguous is a question of law to be resolved by the court.[30] The terms of an insurance contract are not to be rewritten under the rule of strict

---

[23] *Farmers Ins. Exch. v. Bradford*, 2015 Ark. App. 253, at 4, 460 S.W.3d 810, 813 (citing *McGrew v. Farm Bureau Mut. Ins. Co.*, 371 Ark. 567, 268 S.W.3d 890 (2007); *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001)).

[24] *Id.* (citing *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000)).

[25] *Id.* (citing *Philadelphia Indem. Ins. Co. v. Austin*, 2011 Ark. 283, 383 S.W.3d 815).

[26] *Corn v. Farmers Ins. Co.*, 2013 Ark. 444, at 9, 430 S.W.3d 655, 660 (citing *Castaneda v. Progressive Classic Ins. Co.*, 357 Ark. 345, 351, 166 S.W.3d 556, 560 (2004)).

[27] *Id.* (citing *Castaneda,* 166 S.W.3d at 560).

[28] *Id.*, at 9, 430 S.W.3d at 660–61 (citing *Castaneda*, 357 Ark. at 351, 166 S.W.3d at 560–61).

[29] *Id.* at 9, 430 S.W.3d at 661 (citing *Castaneda*, 357 Ark. at 351, 166 S.W.3d at 561).

[30] *Id.*

construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid.[31]

Contrary to appellant's argument, it is clear from a plain reading of the language of the policy's "Insured's Duties" section that the section is not an exclusion, but an outline of the requirements by which an insured must abide when making a claim. Said section provides that appellee may request an IME if necessary to substantiate an insured's claim. As previously discussed, such a request is not prohibited by statute. We cannot find that it was unreasonable for appellee to request an IME for the purpose of determining if the injuries for which appellant was treated were caused by the November 27, 2014 accident. In *Roy v. Farmers & Merchants*, our supreme court stated that "'reasonable proof of benefits means more than proof of a charge or loss."[32] While appellant provided medical bills showing that he had been treated for injuries and the amount thereof, the appellee had a right to question whether such evidence constitutes "reasonable proof" that the injuries for which he was treated were caused by the November 27, 2014 accident.

Given that appellant waited just under one month to seek initial medical treatment and then waited an additional three months before seeking treatment from a chiropractor, and because appellant failed to undergo the IME—a term of the contract when filing a medical claim—we cannot find that the circuit court abused its discretion in finding that appellant's lawsuit is premature.

---

[31] *Id.*

[32] 307 Ark. 213, 216, 819 S.W.2d 2, 3 (1991).

We must also address a related argument that appellant makes in his brief before this court:

> As indicated previously, State Farm's policy provides an additional requirement that the insured must be examined as reasonably often as State Farm may require by physicians chosen and paid by State Farm. This policy was not entered into by Tyler, but rather by his grandparents who he was residing with. Thus, Tyler did not contract this additional requirement of the policy with State Farm.

In making this additional argument relating to the alleged impropriety of appellee's IME provision, appellant implies that he should not have to abide by the provision when he states that he did not enter into the contract with appellee and was not a party to the contract.

The policy under which appellant brings his claim defines "insured" as "you and resident relatives[.]" An insured and an insurer—when the latter has accepted the terms and conditions of a policy with the latter—have "a contract between them, and, being in violation of no principle of law, nor in contravention of the policy of the law, must be enforced according to its terms and meaning; and the courts have the right neither to make contracts for parties nor to vary their contracts to meet and fulfill some notion of abstract justice, and still less of moral obligation."[33] In *Modern Woodmen of America v. Seargeant*, our supreme court stated that "[t]he parties made their own contract, which is free from ambiguity, and necessarily must be enforced according to its terms. The beneficiaries must stand in the shoes of the insured, and will be bound by the terms of the

---

[33] *Inter-State Bus. Men's Acc. Ass'n v. Nichols*, 143 Ark. 369, 364, 220 S.W. 477, 478 (1920) (quoting *Standard Life & Acc. Ins. Co. v. Ward*, 65 Ark. 295, at 298, 45 S.W. 1065, 1066; citing *Maryland Casualty Co. v. Chew*, 92 Ark. 276, at 283, 122 S.W. 642; *Amer. Nat'l. Ins. Co. v. Otis*, 122 Ark. 219, 183 S. W. 183 (1916)).

policy issued[.]"[34] Appellant cannot seek damages under the contract—his grandmother's policy through which he is an unnamed insured—and argue that certain terms of the contract should not apply to him because he did not enter into the contract personally.

Affirmed.

GLOVER and WHITEAKER, JJ., agree.

*Henry Law Firm, PLC*, by: *Megan Henry*, for appellant.

*Snellgrove, Langley, Culpepper, Williams & Mullally*, by: *J. Chad Owens*, for appellee.

---

[34] *Modern Woodmen of Am. v. Seargeant*, 188 Ark. 1098, 1102, 69 S.W.2d 397, 399 (1934) (quoting *Craig v. Golden Rule Life Ins. Co.*, 184 Ark. 48, 41 S.W.(2d) 769, 771 (1931); *Mutual Life Ins. Co. v. Hynson*, 171 Ark. 218, 283 S.W. 357 (1926)).